**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 3, 2001**

BLOSSOM J. HAZLE,

     Plaintiff-Appellee,

v

                            No. 116162

FORD MOTOR COMPANY and FORD-UAW
RETIREMENT BOARD OF ADMINISTRATION,

     Defendants-Appellants.

_____

BEFORE THE ENTIRE COURT

YOUNG, J.

After being denied a promotion, plaintiff filed suit on the ground that she had been discriminated against on the basis of her race, in violation of the Michigan Civil Rights Act. MCL 37.2101 *et seq*. The trial court granted summary disposition in favor of defendants, but the Court of Appeals reversed.

We granted leave in order to further clarify the proper

application of the burden-shifting framework established in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), for the purpose of analyzing proofs in discrimination cases. We now reverse the Court of Appeals decision and reinstate the trial court's order granting summary disposition to defendants.

## I. Factual and Procedural Background

Plaintiff is a black woman with an undergraduate degree in English. She has also completed a portion of the course work required for a master's degree in industrial relations.

In July 1980, plaintiff began working as a pension clerk for the Ford-UAW Retirement Board of Administration, which administers pension benefits for the UAW retirees of Ford Motor Company. Plaintiff was responsible for processing various types of retirement applications, which included "filing, typing . . . answering the phone and helping retirees and surviving spouses and company union rep[resentatives] with problems regarding pensions." She also set up medical evaluations for disability retirement applicants.

In late 1994, when the longtime manager of plaintiff's office decided to retire, the board placed the following advertisement:

*OFFICE MANAGER*

Seeking individual with an Office Manager

2

background to direct the activities of a 6 person office responsible for the administration of pension benefits for over 85,000 pensioners of a major automotive retirement plan.

The qualified individual should have a BS degree in finance or accounting, have strong communication skills, and have office experience directing the work of others. The position is responsible for preparation of the payroll and accounts payable, maintenance of administrative records, and other retirement plan activities.

Plaintiff applied for the job. Among the other applicants were Christine Ewald, another of the pension clerks,[1] and Michelle Block, an outside candidate.[2] Each is white. Block's résumé indicated that she recently had been employed as "supervisor of financial and management reporting" at a medical laboratory and, before that, had been "sales audit supervisor" for a forty-two store chain of automotive parts retailers.

In a letter on Ford Motor Company stationery, plaintiff was informed that she would be given an interview. The letter also stated that her résumé had been "reviewed and determined to satisfy the requirements outlined for this opening."

Two members of the board, Donald Harris, a UAW employee, and Mark Savitskie, who worked for Ford, interviewed the

---

[1]Ewald had been a pension clerk since 1985.

[2]According to defendants' response to plaintiff's first set of interrogatories, there were a total of eighty applicants (both internal and external) for the position.

candidates for the office manager position. On the basis of the résumés and interviews,[3] the two selected Block, whom the board then hired. Plaintiff learned of the board's hiring decision in a second letter from Ford, which thanked her for her interest in the position. The Ford letter reiterated to plaintiff that "[her] experience and education were in line with our expectations and the requirements of the position."

Fourteen months after learning that she would not be promoted, plaintiff filed the present suit in circuit court. Proceeding under the Civil Rights Act, she alleged that defendants "did not offer the position of Office Manager to Plaintiff because Plaintiff is an African-American."

Defendants moved for summary disposition. Although defendants' motion and brief did not indicate expressly which part of the court rule they were relying on, it is evident that they were seeking summary disposition under MCR 2.116(C)(10). Defendants argued that plaintiff could not establish a prima facie case of discrimination under *McDonnell Douglas*, *supra*. They further argued that, even if plaintiff could offer a prima facie case, she failed to offer evidence that defendants' stated reason for hiring Block, that she was

---

[3]Harris and Savitskie did not check references or seek to confirm the factual representations made in the candidates' written submissions.

more qualified, was a mere pretext for discrimination.

Plaintiff responded that Block was in fact not qualified, and that she committed "résumé fraud" in representing her educational and employment background.[4]

Noting that Block's alleged misrepresentations did not surface until after discovery began in this case, the trial court granted defendants' motion, concluding as follows:

> The Court is satisfied that I don't have to get to the pretext issue, because we haven't established a prima facie case of discrimination. The Court's going to kick it under (C)(10).

The Court of Appeals reversed over the dissent of Judge Kelly.[5]

We granted defendants' application for leave to appeal. 463 Mich 928 (2000).

## II. Standard of Review

We review de novo a trial court's decision on a motion for summary disposition. A motion for summary disposition

---

[4]Block's résumé suggests that she took classes at Henry Ford Community College over an extended period. As noted, her stated work experience included time as a "supervisor of financial and management reporting" at a medical laboratory and as "sales audit supervisor" at an automotive-parts retailer. Relying on materials obtained during discovery, plaintiff maintains that Block's transcript shows little academic progress, that she was only a temporary clerical employee at the medical laboratory, and that she was fired by the automotive-parts retailer for poor performance.

[5]Unpublished opinion per curiam, issued August 27, 1999, reh den December 21, 1999 (Docket No. 204496).

brought under MCR 2.116(C)(10) tests the factual support of a claim. After reviewing the evidence in a light most favorable to the nonmoving party, a trial court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 453; 597 NW2d 28 (1999).

### III. Analysis

#### A. Direct Versus Indirect Evidence of Discrimination

Plaintiff claims that defendants discriminated against her on the basis of race in violation of MCL 37.2202(1)(a), which provides, in relevant part:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

In some discrimination cases, the plaintiff is able to produce direct evidence of racial bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case. *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-539; 620 NW2d 836 (2001); *Matras v Amoco Oil*

6

*Co*, 424 Mich 675, 683-684; 385 NW2d 586 (1986). For purposes of the analogous federal Civil Rights Act, the Sixth Circuit Court of Appeals has defined "direct evidence" as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v Schering-Plough Healthcare Products Sales Corp*, 176 F3d 921, 926 (CA 6, 1999); see also *Harrison v Olde Financial Corp*, 225 Mich App 601, 610; 572 NW2d 679 (1997).

In many cases, however, no direct evidence of impermissible bias can be located. In order to avoid summary disposition, the plaintiff must then proceed through the familiar steps set forth in *McDonnell Douglas*, *supra* at 802-803. The *McDonnell Douglas* approach allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow*, *supra* at 537-538. Although originally created for use in race discrimination cases, we have adopted the *McDonnell Douglas* approach for use in age and gender discrimination cases brought under the Michigan Civil Rights Act as well. See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-178; 579 NW2d 906 (1998). Because plaintiff here has offered no direct evidence of race discrimination, she is constrained to rely on the *McDonnell*

7

*Douglas* framework.

Under *McDonnell Douglas*, a plaintiff must first offer a "prima facie case" of discrimination. Here, plaintiff was required to present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Lytle*, *supra* at 172-173; see also *Texas Dept of Community Affairs v Burdine*, 450 US 248, 254, n 6; 101 S Ct 1089; 67 L Ed 2d 207 (1981); *McDonnell Douglas*, *supra* at 802.[6]

When the plaintiff "has sufficiently established a prima facie case, a presumption of discrimination arises." *Lytle*, *supra* at 173. In *Furnco Construction Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978), the Court explained that the *McDonnell Douglas* prima facie case raises an inference of discrimination "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."

---

[6]We utilize here a formulation of the *McDonnell Douglas* prima facie case approach that is consistent with the facts of this case. As the Supreme Court explained in *McDonnell Douglas*, the facts will necessarily vary in discrimination cases. Thus, the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand.

However, the fact that a plaintiff has established a prima facie case of discrimination under *McDonnell Douglas* does not necessarily preclude summary disposition in the defendant's favor. As the Supreme Court explained in *Burdine*, *supra* at 254, n 7:

> The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense. [Citation omitted.]

In other words, the *McDonnell Douglas* prima facie case does not describe the plaintiff's burden of production, but merely establishes a rebuttable presumption.

Thus, once a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case. *Lytle*, *supra* at 173; *McDonnell Douglas*, *supra* at 802.[7] The articulation

---

[7]In determining whether an employment decision is a "legitimate, nondiscriminatory" one, it must be noted that courts must not analyze the "soundness" of that decision. In other words, courts must not second guess whether the employment decision was "wise, shrewd, prudent, or competent." *Town v Michigan Bell Telephone Co*, 455 Mich 688, 704; 568 NW2d 64 (1997). Instead, the focus is on whether the decision was

(continued...)

requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason.[8] "Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Burdine*, *supra* at 256, n 9; see also *St Mary's Honor Center v Hicks*, 509 US 502, 506-507; 113 S Ct 2742; 125 L Ed 2d 407 (1993). If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away.[9]

At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is

---

[7](...continued)
"lawful," that is, one that is not motivated by a "discriminatory animus." *Burdine, supra* at 257.

[8]While the burden of production shifts to the defendant at this stage of the *McDonnell Douglas* analysis, "[t]he nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, *supra* at 253.

[9]If the defendant does *not* articulate a legitimate, nondiscriminatory reason for its employment decision, the presumption created by the *McDonnell Douglas* prima facie case stands unrebutted. However, this does not mean that the plaintiff is entitled to judgment as a matter of law. Rather, in such a case, judgment in favor of the plaintiff would be appropriate only if the trier of fact believes the plaintiff's evidence. See *Burdine, supra* at 254.

10

"sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle, supra* at 176.[10] As we first held in *Town v Michigan Bell Telephone Co*, 455 Mich 688, 698; 568 NW2d 64 (1997), and then reaffirmed in *Lytle, supra* at 175-176, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination."

The inquiry at this final stage of the *McDonnell Douglas* framework is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision. See SJI2d 105.02.[11] The only difference is that, for purposes of

_____

[10]At one point in *Lytle, supra* at 174, we used some imprecise language in describing the plaintiff's burden at this stage of the *McDonnell Douglas* analysis. We stated that a plaintiff must show "*by a preponderance* of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination" (emphasis added). This reference in *Lytle* to the term "preponderance" is suggestive of a plaintiff's ultimate burden of persuasion. We wish to make clear that, in response to a motion for summary disposition brought under MCR 2.116(C)(10), the nonmoving party's obligation is only to show the existence of a "genuine issue as to any material fact."

[11]The standard jury instruction is consistent with the
(continued...)

a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision.

As the Supreme Court explained in *Burdine*, *supra* at 256, n 8, the *McDonnell Douglas* burden-shifting framework is merely intended "to progressively sharpen the inquiry into the elusive factual question of intentional discrimination."  It is important to keep in mind, therefore, that for purposes of claims brought under the Michigan Civil Rights Act, the *McDonnell Douglas* approach merely provides a mechanism for assessing motions for summary disposition and directed verdict in cases involving circumstantial evidence of discrimination.[12] It is useful only for purposes of assisting trial courts in determining whether there is a jury-submissible issue on the ultimate fact question of unlawful discrimination.  The *McDonnell Douglas* model is *not* relevant to a jury's evaluation

---

[11](...continued)
statutory prohibition against discrimination "because of" a protected characteristic.  MCL 37.2202(1)(a).

[12]As stated, the *McDonnell Douglas* approach is *not* applicable in cases involving *direct* evidence of discrimination.  *DeBrow*, *supra* at 539, citing *Trans World Airlines, Inc v Thurston*, 469 US 111, 121; 105 S Ct 613; 83 L Ed 2d 523 (1985).

of evidence at trial.  Accordingly, a jury should not be instructed on its application.  See *Gehrig v Case Corp*, 43 F3d 340, 343 (CA 7, 1995) (explaining that, in federal discrimination cases, "[o]nce the judge finds that the plaintiff has made the minimum necessary demonstration [the 'prima facie case'] and that the defendant has produced an age-neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question-the *only* question the jury need answer-is whether the plaintiff is a victim of intentional discrimination").

B.  Plaintiff's *McDonnell Douglas* Prima Facie Case

As noted, in order to establish a prima facie case of discrimination under *McDonnell Douglas*, plaintiff was required to present admissible evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Lytle*, *supra* at 172-173; *McDonnell Douglas*, *supra* at 802.[13]  There is no dispute in this case regarding the first two elements:

---

[13]Although *Lytle* states that a plaintiff must "prove" these four elements "by a preponderance of the evidence," we again emphasize that a plaintiff does not have to *prove* anything to the trial court at the summary disposition stage.

13

Plaintiff is black, and she did not receive the promotion for which she applied.

At issue here are the third and fourth elements of a prima facie case. The third element requires proof that plaintiff was qualified for the position she sought. The fourth element requires proof that the job was given to another person under circumstances giving rise to an inference of discrimination.

Defendants argue that plaintiff has failed to establish the third and fourth elements of a *McDonnell Douglas* prima facie case. They contend that, even if minimally qualified, plaintiff had "neither supervisory experience nor training or experience in financial or accounting matters–two crucial preferred qualifications of the Office Manager position," and that, in any event, she was far less qualified than Michelle Block. In defendants' view, a plaintiff alleging a discriminatory failure to promote or hire can only establish a prima facie case under *McDonnell Douglas* by providing evidence that he is *at least as qualified* as the successful candidate. We disagree.

As an initial matter, nothing in the Supreme Court's decision in *McDonnell Douglas* suggests that a plaintiff is *required* to offer evidence of relative qualifications in order

to establish a prima facie case of discrimination. Nor have the Court's subsequent decisions identified such a requirement. In fact, we believe that at least one of the Court's post-*McDonnell Douglas* decisions suggests that a plaintiff is *never* required to establish relative qualifications.

In *Patterson v McLean Credit Union*, 491 US 164; 109 S Ct 2363; 105 L Ed 2d 132 (1989), the Court addressed a plaintiff's burden of persuading a jury of intentional discrimination. The federal district court in that case had instructed the jury that the plaintiff, in order to prevail on her claim that the defendant failed to promote her because of race discrimination, was *required* to show that she was better qualified than the employee who received the promotion. In determining that this was error, the Supreme Court emphasized that a plaintiff

> is not limited to presenting evidence of a certain type. . . . The evidence which petitioner can present in an attempt to establish that respondent's stated reasons are pretextual may take a variety of forms. Indeed, she might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position. The District Court erred, however, in instructing the jury that in order to succeed petitioner was required to make such a showing. There are certainly other ways in which petitioner could seek to prove that respondent's reasons were pretextual.

15

Thus, for example, petitioner could seek to persuade the jury that respondent had not offered the true reason for its promotion decision by presenting evidence of respondent's past treatment of petitioner, including the instances of the racial harassment which she alleges and respondent's failure to train her for an accounting position. While we do not intend to say this evidence necessarily would be sufficient to carry the day, it cannot be denied that it is one of the various ways in which petitioner might seek to prove intentional discrimination on the part of respondent. She may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual. [*Id.* at 187-188 (citations omitted).]

Because a plaintiff has no obligation to prove relative qualifications to a jury, it can hardly be disputed that a plaintiff cannot be *required* to offer evidence that he is at least as qualified as the successful candidate in order to establish a prima facie case under *McDonnell Douglas*. See *Walker v Mortham*, 158 F3d 1177, 1192 (CA 11, 1998) ("We cannot imagine that the Supreme Court would speak so strongly regarding the lack of any burden to prove lesser qualifications and still leave available to the defendant at summary judgment the argument that the plaintiff failed to prove equal qualifications").

Nor does anything in the language of the Civil Rights Act itself suggest a requirement that a plaintiff prove relative qualifications in order to succeed on a discrimination claim, let alone require that a plaintiff offer such evidence in

16

order to survive a motion for summary disposition or directed verdict. As stated, the ultimate factual inquiry in any discrimination case is whether unlawful discrimination was a motivating factor in the employer's decision. We think it beyond question that, although relative qualifications certainly may be relevant in a discrimination case, particularly, as explained below, if a defendant relies on them to rebut the presumption of discrimination created by the plaintiff's prima facie case, the fact that a plaintiff was "less qualified" than the successful applicant would not necessarily preclude a jury from finding that unlawful discrimination was nevertheless a motivating factor in the employer's decision. Therefore, we hold that a plaintiff is not required to provide evidence that he is at least as qualified as the successful candidate in order to establish a prima facie case under *McDonnell Douglas*.

By this holding, we do not mean to suggest that a plaintiff can establish the third and fourth elements of a *McDonnell Douglas* prima facie case merely by showing that he was qualified for the position and that a nonminority candidate was chosen instead. While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the

employer's actions, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Burdine*, *supra* at 253. In short, a plaintiff must offer evidence showing something more than an isolated decision to reject a minority applicant. See *Teamsters v United States*, 431 US 324, 358, n 44; 97 S Ct 1843; 52 L Ed 2d 396 (1977). As a matter of law, an inference of unlawful discrimination does not arise merely because an employer has chosen between two qualified candidates.[14] Under such a scenario, an equally-if not more-reasonable inference would be that the employer simply selected the candidate that it believed to be most qualified for the position. See *id*.

In this case, plaintiff met the third element of a *McDonnell Douglas* prima facie case by presenting evidence that she was qualified for the office manager position. Indeed, as stated, defendants themselves twice confirmed in writing their belief that plaintiff was among those who had the *necessary* qualifications for the position.

---

[14]Largely because the issue was undisputed, we assumed in *Lytle*, *supra* at 177, that the plaintiff established a prima facie case under *McDonnell Douglas* by presenting evidence that "she was replaced by a younger person." We caution the bench and bar not to rely on *Lytle* for the proposition that a prima facie case of unlawful discrimination can be established merely by providing evidence that a qualified minority candidate was rejected in favor of a qualified nonminority candidate. As opposed to this case, *Lytle* did not involve a choice between two qualified candidates for an open position.

18

Finally, plaintiff presented evidence from which a jury, if unaware of defendants' reasons, could infer unlawful discrimination. Although she was not required to proceed in this manner, plaintiff presented evidence suggesting that she was rejected in favor of a less qualified white applicant. There was evidence that (1) only plaintiff had a college degree and credits toward a master's degree in industrial relations, and (2) only plaintiff had substantial work experience with defendants. Thus, we conclude that plaintiff presented evidence supporting the fourth and final element of a *McDonnell Douglas* prima facie case, and that the burden then shifted to defendants to articulate a legitimate, nondiscriminatory reason for their decision to hire Michelle Block instead of plaintiff.

C. Defendants' Justification for their Employment Decision

Defendants cited several reasons for their decision to hire Michelle Block rather than plaintiff. Among them were plaintiff's lack of experience in supervision, finance, or accounting. By contrast, Block's application materials indicated that she had supervised an audit department of six persons and had significant financial experience.

Defendants also expressed their desire to change the manner in which business would be conducted in the office;

19

they wanted to hire what is customarily known as a "change agent." Deposition testimony indicates that the former office manager allowed the pension clerks great autonomy with regard to their work and even their work schedules. Petty cash was handled informally, and a simple matter like the office's no-smoking policy was routinely ignored. As the number of Ford-UAW retirees continued to grow, defendants wanted the office to improve the service it was providing. In this regard, Mark Savitskie testified that he was looking for someone "who would be able to identify problems and effect change and processes that would correct problems."

When asked why he believed Block to be more qualified than plaintiff, Savitskie testified as follows:

> I believe that Michelle's experience, her practical experience, her business experience, her work experience, gave her a broad number of skills that would help her meet my requirement.

Compared to Block, Savitskie felt that plaintiff was "somewhat isolated in terms of comparing the dealings with outsiders, written responsibilities, dealing with processes and data and correcting problems." Savitskie testified that he saw plaintiff as a person who did not seem to appreciate the need for change. Donald Harris expressed a similar view, testifying that he believed Block to be a person "who could make changes, incorporate those changes and motivate people to

20

accept those changes."

We conclude that defendants made a sufficient showing that they had legitimate, nondiscriminatory reasons for choosing Michelle Block over plaintiff. This means that the presumption of discrimination created by plaintiff's prima facie case dropped away, and the burden of production returned to plaintiff to show the existence of evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle*, *supra* at 176.

### D. Was Race a Motivating Factor in Defendants' Employment Decision?

Reviewing the evidence in a light most favorable to plaintiff and drawing any reasonable inferences in her favor, we conclude that she has failed to create a triable issue for the jury concerning whether race was a motivating factor in defendants' employment decision.

While plaintiff maintains that the office manager position did not in fact require knowledge of finance or accounting principles, it is fatal to plaintiff's claim that she has offered no record evidence that actually supports this position. We also note plaintiff's repeated assertion that,

when she asked for an explanation for why she was not selected for the office manager position, she was told that Michelle Block "had a Bachelor's Degree in Accounting." This, of course, would have been a false explanation, given that Block had *no* college degree at all and that she never claimed to have one. Such evidence very likely would have provided a basis for a reasonable jury to infer unlawful discrimination. However, again, plaintiff has offered no *evidence* to support her claim. Instead of record evidence, plaintiff relies on a statement made by *her attorney* during the hearing on defendants' motion for summary disposition. That clearly is an inappropriate means of opposing a motion for summary disposition brought under MCR 2.116(C)(10). See *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

Furthermore, even if, as plaintiff claims, Block's application materials contained exaggerated and false information calling into question her qualification for the office manager position, there is no record evidence that any of this was known to defendants when they made their employment decision. Therefore, any subsequently discovered shortcomings in Block's credentials cannot possibly serve as a basis for an inference of unlawful discrimination.[15]

---

[15]In *McKennon v Nashville Banner Publishing Co*, 513 US (continued...)

22

For its part, the Court of Appeals held that discriminatory animus was shown by defendants' decision to hire Michelle Block despite the fact that she did not have a college degree, and by defendants' knowledge that Block "would require considerable training in order to do her job." However, we fail to see how either observation could possibly support a jury finding that race was a motivating factor in defendants' employment decision. There is no dispute that Block did not have a college degree, and there is no evidence that defendants ever claimed that she did. Moreover, although plaintiff *did* have a college degree, it was in English, not in finance or accounting. The bottom line is that *both* plaintiff and Block lacked the preferred qualification of a degree in finance or accounting. Thus, the mere fact that defendants hired Block despite her lack of a college degree does not give rise to an inference of unlawful discrimination. Finally, no

---

[15](...continued)
352, 360; 115 S Ct 879; 130 L Ed 2d 852 (1995), the Supreme Court held that an employer may not rely on after-acquired evidence of an employee's wrongdoing in order to avoid liability for a discriminatory employment decision, explaining in part that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."

We believe a logical corollary of this principle to be that an employee cannot establish discriminatory intent by offering evidence of facts that were unavailable to the employer when it made its employment decision.

record evidence suggests that plaintiff would have been able to assume the office manager position with any less training than Block required.

Plaintiff, and the Court of Appeals for that matter, would have the jury second-guess defendants' business judgment concerning whether Block or plaintiff was better qualified. However, as we explained in *Town*, *supra* at 704:

> "A plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." [Citation omitted.]

The only requirement is that, "when evaluating its employees, employers are to evaluate them on the basis of their merits, in conjunction with the nature of their businesses at the time of the evaluation, and not on the basis of any discriminatory criterion." *Id*. at 710 (Riley, J., concurring).

The essence of defendants' stated reasons for their decision to hire Michelle Block over plaintiff was that they did not believe that plaintiff was as qualified as Michelle Block for the office manager position. While plaintiff was not required to seek to show that she was in fact more qualified than Block in order to survive summary disposition, plaintiff *was* required to demonstrate that the evidence in

this case would permit a jury to find that defendants' explanation was a pretext for race discrimination. Other than her subjective claim that she was more qualified than Michelle Block, plaintiff has offered nothing to support her claim that defendants acted with racial animus. In our view, the following testimony from plaintiff's deposition accurately captures the dispute in this case:

> *Q.* Why do you believe that your race had anything to do with the selection of [Michelle Block] over you?
>
> *A.* Well, because I felt I was very qualified for the position and just from my own observation I just feel that I'm a better qualified person. They hired a Caucasian woman. So I felt it was a racial issue.
>
> *Q.* Do you have any other reason, any reason at all for thinking that your race had anything to do with the selection of [Block] over you?
>
> *A.* No.

Accordingly, plaintiff has failed to create a genuine issue of material fact concerning whether defendants relied on any discriminatory animus in making their employment decision.

## IV. Conclusion

The record in this case contains evidence sufficient to create a prima facie case of race discrimination under *McDonnell Douglas*. In response, defendants articulated a legitimate, nondiscriminatory reason for their action.

25

Plaintiff, however, was unable to offer any evidence that the defendants' stated reasons were a pretext for discrimination, that is, that race was a motivating factor in their employment decision. Defendants were therefore entitled to summary disposition as a matter of law.

Because the trial court properly granted summary disposition to defendants, we reverse the decision of the Court of Appeals, and reinstate the trial court's order.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.