# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL L. KONIECZKI,

Plaintiff-Appellant,

v

CITY OF JACKSON,

Defendant-Appellee.

UNPUBLISHED
November 18, 2014

No. 316097
Jackson Circuit Court
LC No. 12-000854-CD

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition to defendant under MCR 2.116(C)(10) and dismissing her retaliation and sex/gender discrimination claims. We affirm.

At the time of her termination, plaintiff was employed by defendant as the Director of Community Development; she had worked for defendant in several positions since 1999. She had discussed an issue relating to the sexual harassment of her secretary with Warren Renando, the retired city manager. Plaintiff did not follow appropriate procedures in addressing the issue and months later, after plaintiff spoke with the alleged harasser, the issue subsided. Renando eventually returned as city manager and having heard rumors about the harassment decided to conduct an investigation into the issue. Although plaintiff participated in the investigation, she was not the principal in charge or heavily involved. The issue was resolved following a meeting where plaintiff's secretary signed a statement that there was no sexual harassment and was told to report any issues that may arise in the future. At some point the alleged harasser left for a new position.

While in the past plaintiff had received positive performance reviews, the evidence illustrated that her performance quality fell, and her relationships with other employees and the newly elected mayor deteriorated in the period just before her employment termination. Renando attested that he had multiple discussions with plaintiff before September 12, 2010, regarding her poor work performance, her poor relationships with her staff and other department heads, and her attendance. On September 14, 2010, Mayor Dunigan sent a memorandum to Renando stating that she was dissatisfied with a report from the Michigan State Housing Development Authority regarding the Jackson Neighborhood Stabilization Program, which was under plaintiff's control. The mayor requested that steps be taken to establish a system of

-1-

checks to insure the problem would not happen again. While plaintiff denied she was ever accused of poor performance before September 20, 2010, notes handwritten by plaintiff during a September 13, 2010 meeting with Renando evidenced his concerns about her performance and the possibility she was on the mayor's "target list." The notes indicated that he criticized her attendance and relationships with department heads.

Plaintiff sent an email to Renando on September 20, 2010, stating that she had been under significant stress over the previous few months, caring for a dying ex-husband and helping her children. She stated that she was one of Renando's supporters and for this reason, she turned to him for advice during his retirement. She stated that, after he again became city manager, she was relieved that the harassment issue was resolved. She noted that because the alleged harasser left to take another position, there would be additional stress in the city government, and she hoped this did not have an adverse impact on her. She then stated that she had completed her job duties competently. Renando commented to plaintiff that morning that he wished she had not sent the email because now he would have to respond. Because plaintiff had mentioned her competent work, he needed to correct this in writing.

He did so on September 24, 2010, with a letter of reprimand regarding her performance, specifically mentioning her attendance, relationships with other department heads and the mayor, failure to submit timely agenda items to City Council, and asking staff to do personal favors. Renando requested that plaintiff provide detailed charts about what each employee under her direction did and statistics that showed what had been done and needed to be done. He expected progress in 30 to 60 days. Renando noted that plaintiff was an at-will employee and could be dismissed with or without cause. On November 23, 2010, Renando issued a letter to plaintiff terminating her employment. The letter outlined plaintiff's failure to perform adequately, specifically her failure to improve the issues presented in the letter of reprimand. Plaintiff never provided the requested chart, gained the trust of external organizations and co-workers, or punctually attended meetings.

Plaintiff filed a complaint alleging she was terminated in retaliation for her involvement in the sexual harassment investigation and because she was subjected to different attendance and conduct standards than male department heads. Plaintiff asserted that she suffered sex-based discrimination contrary to MCL 37.2202(1), and retaliation contrary to MCL 37.2701(a). Following discovery, the trial court granted summary disposition to defendant. The court held that with regard to the elements of the retaliation claim, plaintiff was engaged in protected activity but there was no causal connection between the protected activity and her termination. Regarding the sex discrimination claim, the trial court held that there was no evidence plaintiff was discriminated against in terms of the attendance policy, and criticism of her use of inappropriate language was unrelated to her termination. Plaintiff appeals the trial court's order.

This Court reviews an order granting summary disposition de novo. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). Under MCR 2.116(C)(10), summary disposition is properly granted where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). The trial court must consider all affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. *Id*.

The Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, prohibits an employer from making adverse employment decisions on the basis of sex. MCL 37.2202(1)(a); *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005).

A plaintiff may prove discrimination by direct or circumstantial evidence. Where the evidence is circumstantial, Michigan applies the test articulated in *McDonnell Douglas Corp v Green*, 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973), wherein a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539-540; 620 NW2d 836 (2001). A plaintiff can establish a prima facie case by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position, and (4) she was subjected to the adverse action under circumstances giving rise to an inference of discrimination. *Hazle v Ford Motor Co*, 464 Mich 456, 463; 628 NW2d 515 (2001). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory business reason for the adverse employment action. *Id*. at 464. If the defendant produces evidence establishing a legitimate reason for the discharge, the plaintiff has the opportunity to prove that the reason offered was not the true reason, but was only a pretext for the true discriminatory motivation for the adverse action. *Id.* at 465-465. Where there is direct evidence of unlawful discrimination, the *McDonnell Douglas* test does not apply. *DeBrow*, 463 Mich at 539. Direct evidence refers to evidence that if believed requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Sniecinski v Blue Cross & Blue Shield*, 469 Mich 124, 132-133; 666 NW2d 186 (2003).

In this case, plaintiff relied on circumstantial evidence to show that she was the victim of sex discrimination. She relied on Renando's statement that using profanity was "unladylike" and asserted that she was treated differently from male department heads when it came to attendance. Specifically, she asserted that they left work early on Fridays to attend golf league games.

Plaintiff failed to establish a prima facie case of discrimination. While permitting different standards of language based on sex would be discriminatory, this incident must be viewed in context. The sum of the evidence shows that it was likely not the use of the language that was problematic but that the language was used to describe a co-worker. There is no evidence male employees were allowed to use profanity to describe co-workers. Furthermore, and most significantly, this statement had nothing to do with plaintiff's termination. Nowhere was this statement reflected as a ground or factor in plaintiff's termination. The only loose connection was that plaintiff was terminated in part for her poor relationships with her co-workers, which was based on general issues beyond this event. Regarding plaintiff's allegations that she was held to a different attendance standard than male department heads, the only evidence plaintiff put forth was that the men were allowed to leave early to attend golf league games. But plaintiff was not prevented from being in the golf league. Furthermore, the evidence showed that while male department heads did leave early on Fridays, they were otherwise fully present at work through their timely attendance of staff meetings, timely arrival to work, and keeping in contact with their staffs. This was in contrast to plaintiff, who was repeatedly warned about her lack of attendance and presence at work. Plaintiff's sex discrimination claim consisted of mere allegations regarding single events that did not support an inference of sex discrimination.

Furthermore, to the degree plaintiff showed discrimination, defendant clearly presented nonpretexual and legitimate reasons for her termination. Specifically, there was significant evidence that plaintiff was terminated based on her poor work performance, including her failure in the Jackson Neighborhood Stabilization Program, her poor attendance at work and in meetings, her failure to maintain relationships externally and with fellow department heads, and her failure to maintain a working relationship with the mayor. Plaintiff failed to remedy these problems as instructed in the letter of reprimand sent to her. Furthermore, she failed to submit charts outlining her staff and their work product as requested in the letter of reprimand. While, as claimed by plaintiff, many of these issues would have been challenging to remedy, this does not mean the termination was motivated by sex discrimination for her failure to do so. Plaintiff's contention that her problems, in part, resulted from the mayor's lack of experience also does not equate to actions being discriminatory on the basis of plaintiff's sex. While it is possible the termination was arbitrary, it was not discriminatory. Accordingly, the trial court did not err in dismissing plaintiff's sex discrimination claim.

Next, plaintiff asserts that the trial court erred in dismissing her retaliation claim. MCL 37.2701(a) provides in relevant part:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

In order to demonstrate a claim and establish a prima facie case of retaliation under the statute, a plaintiff is required to show that (1) the plaintiff engaged in a protected activity; (2) this was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Meyer v City of Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000).

The only issue on appeal pertains to the fourth element—whether there was a sufficient casual connection between the protected activity and the adverse employment action. While defendant asserted in the trial court that plaintiff was also not engaged in a protected activity, the trial court ruled that she was and decided the issue based on causation. Defendant does not now challenge the holding that plaintiff was involved in a protected activity.

To establish causation, the plaintiff must show that his or her participation in protected activity was a significant factor in motivating the employer's adverse employment action, not just that there was a causal link between the two. *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001). Proof of temporal proximity between the protected activity and the adverse employment action is not sufficient to support a finding of a causal connection without evidence that plaintiff's participation in the protected activity was a significant factor in the adverse employment action. *Stevens v Estes Exp Lines*, 833 F Supp 2d 729, 736 (ED Mich 2011). As with claims of sexual discrimination, Michigan applies the burden-shifting test of *McDonnell Douglas*, 411 US at 802, to retaliation claims. *Roulston v Tendercare (Michigan) Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000).

-4-

Plaintiff failed to demonstrate that her termination was retaliatory. The only evidence plaintiff offered was the temporal proximity between events relating to the investigation and her email to Renando in part on the issue, and the letters of reprimand and termination. The temporal proximity between the events was distant. Additionally, there was sufficient evidence to show a history of complaints about plaintiff's work performance dating before plaintiff's email to Renando. Even if the temporal proximity did show a prima facie case, as previously discussed, defendant offered extensive evidence to show legitimate and unrelated reasons for the termination. As explained by Renando, the reason a letter of reprimand followed the email from plaintiff was that the email contained statements about her competent work performance, and, in light of his previous discussions with her on the issue, he was forced to respond to correct what she had asserted in her email. He expressed that he wished she had not sent the email' so he would not have had to respond. The evidence showed that plaintiff merely attempted to use her involvement in the sexual harassment investigation to shield herself from the results of her poor work performance. Accordingly, the trial court did not err in dismissing the retaliation claim.

We affirm. As the prevailing party, defendant may tax costs pursuant to MCR 7.219.


/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto

-5-