# STATE OF MICHIGAN

# COURT OF APPEALS

APOLONIO CAVAZOS,

       Plaintiff-Appellant,

v

CO-GAB ENTERPRISES, INC., and MIKE
JOHNSON,

       Defendants-Appellees.

UNPUBLISHED
February 12, 2015

No. 319750
Allegan Circuit Court
LC No. 13-051409-CD

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiff appeals from the trial court's grant of summary disposition under MCR 2.116(C)(10) on plaintiff's employment discrimination claims. We affirm.

Plaintiff worked off and on at the Coral Gables Resort in Saugatuck, which is owned by defendant Co-Gab Enterprises. His most recent employment commenced in 2008 and continued until his termination in March 2010. Plaintiff alleges that, during this period of his last employment with defendant, there was a persistent hostile environment at work, with pervasive use of derogatory language regarding his Hispanic heritage, and actions such as pretending to perform a Mexican hat dance by the owner of Co-Gab, defendant Johnson, or others in his employ, including the general manager, Larry Raby, and an assistant supervisor, Kristine Ooms. According to plaintiff, his termination occurred when he approached Raby and asked him to have Johnson cease the derogatory comments and behavior. According to plaintiff's affidavit, Raby refused, explaining that if he did, Johnson "will get angry." Plaintiff responded by giving his two weeks' notice. According to plaintiff, Raby then immediately fired plaintiff and then told plaintiff to "get my 'brown ass' off the property. Defendant contends that plaintiff was fired because of employee misconduct.

Plaintiff filed complaints with the Michigan Civil Rights Commission and the federal EEOC. Both agencies declined to proceed on the basis that there was insufficient evidence to proceed. Plaintiff had also filed a claim for unemployment compensation, which defendant contested. Plaintiff was disqualified for benefits based on the determination that his termination was for employee misconduct. Plaintiff thereafter filed the instant action alleging violation of Title VII of the federal Civil Rights Act, as well as a violation of the Michigan Civil Rights Act.

The trial court granted summary disposition, concluding that plaintiff could not establish a necessary element of his prima facie case, that he had been replaced by someone not a member of the protected class. Plaintiff now appeals and we affirm.

We review the trial court's grant of summary disposition de novo. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). A motion under MCR 2.116(C)(10) tests the factual support for a claim and summary disposition is appropriate if there is no genuine issue of material fact. *Id*. Under *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), a plaintiff must establish a prima facie case of discrimination, which is accomplished by presenting evidence under a four-prong test. At issue here is the fourth prong, namely that the job was given to someone else, not of the protected class, or that he was treated differently than other, non-protected employees. *Hazle*, 464 Mich at 463; *Abdulnour v Campbell Soup Supply Co, LLC,* 502 F3d 496, 501 (CA 6, 2007). The only available evidence in this case is that plaintiff was replaced by another Hispanic male, Rocha Juan.

Plaintiff argues that the four-prong *McDonnel Douglas* test does not apply here because there is direct evidence of discrimination. Defendant contends that, even where there is direct evidence of discrimination, the four-prong test must be met to establish a prima facie case. Neither party presents any authority that definitively establishes their position. But we need not resolve that question because, even if plaintiff is correct that the four-prong test does not apply where the plaintiff can establish direct evidence of a discriminatory reason for the discrimination, plaintiff has failed to do so in this case.

Plaintiff offers little in the way of evidentiary support for his position. It primarily consists of a pair of similar affidavits executed by plaintiff, briefly laying out what his testimony at trial would be. That affidavit merely states that Raby fired plaintiff in lieu of accepting his two weeks' notice. Raby's alleged statement to plaintiff to get his "brown ass" off the property only came after the termination. Moreover, plaintiff's affidavit specifically states that "At no point in this conversation with Larry Raby did he refer at all to any other reason for my termination." Thus, the only factual support that plaintiff can offer as direct evidence of the motive for the termination is that Raby wished plaintiff to leave immediately instead of waiting out the two-week notice period, hardly an unusual occurrence in the employment world.

By contrast, defendant is able to offer substantial evidence of plaintiff's misconduct. In support of their motion for summary disposition, defendants offered excerpts from the testimony at the unemployment compensation hearing. At that hearing, Ooms testified concerning plaintiff's intentionally making food wrong in the kitchen and that plaintiff had called her "A white bitch, whore, cunt, drunk," apparently on more than one occasion. She complained to Raby about plaintiff's conduct.

Plaintiff's own testimony only served to support defendants' position. He testified in part on cross-examination as follows:

> *Q.* Mr. Cavazos, did you draw a Valentine for Larry Raby in 2010?
>
> *A.* Yes I did and I gave it to him. Not like Kris said. She lied.

*Q.* And—and did that drawing depict your penis going into Mr. Raby's anus?

*A.* It's not his anus and it's not my penis. You guys ever watch like South Park. You see shit like that all the time. I made him a sarcastic greeting card which is more than what he ever game me in two years there. I gave a greeting card. It was Valentine's Day. Here Larry for everything you've done for me.

*Q.* Did that greeting card have a penis going into a –

*A.* It was a heart.

*Q.* Did it have a penis?

*A.* Going through the heart.

*Q.* And did it have your name on –

*A.* No.

*Q.* Did it have Larry's name on it?

*A.* Yes.

*Q.* Okay. Did you call Kristine a bitch?

*A.* I never called her a white drunken, fucking slut mess up word she did. I—I called her a drunken slut or a drunken asshole, or a drunken crybaby. But I never called her a white drunken cunt, bitch, whore, slut. I'm not that uncoordinated where I can't put a sentence together, sir. I am an American.

*Q.* Drunken slut?

*A.* Yeah.

*Q.* Okay.

*A.* For propositioning my daughter-in-law.

*Q.* And—and did you call her a whore?

*A.* Well, she is.

*Q.* Did you call her a whore?

*A.* I might have.

*Q.* Did—did you call her a bitch?

*A.* She is.

-3-

In sum, there is a lack of direct evidence of racial discrimination. Accordingly, plaintiff was obligated to satisfy the four-prong test of *McDonnell Douglas*. Plaintiff is unable to establish either that there were other similarly situated, non-protected employees who were not terminated for engaging in similar behavior or that he was replaced by someone not a member of his protected class. In fact, the only evidence is the exact opposite—that he was replaced by a member of the same protected class.

For these reasons, we conclude that the trial court properly granted summary disposition. In light of this conclusion, we need not determine that the trial court correctly concluded that the Title VII action was also subject to dismissal because plaintiff failed to timely file it after the adverse agency decision and failed to timely procure a Right to Sue letter.

Affirmed. Defendants may tax costs.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey