NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0316n.06

No. 14-2137

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*May 01, 2015*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATSY BORUM, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ILLINOIS CENTRAL RAILROAD COMPANY; | ) | COURT FOR THE EASTERN |
| SUBSIDIARIES; COLIN MCKELVIE, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: CLAY, KETHLEDGE, and DONALD, Circuit Judges.

KETHLEDGE, Circuit Judge. Patsy Borum sued her employer, Illinois Central Railroad Company, and her supervisor, Colin McKelvie, for alleged employment discrimination in violation of Michigan law. The district court granted summary judgment to the defendants. We affirm.

I.

Since 1974, Borum has worked for Illinois Central Railroad—which is a subsidiary of a Canadian company—in the Railroad's office in Troy, Michigan. Borum, who is African-American, sued the Railroad for employment discrimination in 1999 after a supervisor revoked her promotion. Two years later, she entered a confidential settlement agreement with the Railroad. Under the agreement, the Railroad created a new management position for Borum and promised that she would remain a Railroad employee at her current pay grade or higher so long as she could competently perform her job.

McKelvie became Borum's supervisor in 2010. Two years later, McKelvie's boss, Mark Zunti—with input from McKelvie—decided to eliminate Borum's position and transfer her duties to Colleen Cameron. Cameron is a white, Canada-based employee who has worked for the Railroad for 25 years. Sometime around January 12, 2012, McKelvie and a Human Resources employee, Todd Taylor, met with Borum to tell her that her position was being eliminated. McKelvie told Borum that the decision was not based on her performance, but rather was made to reduce costs and increase staffing efficiencies. Taylor told Borum that she could choose one of three options: retire, transfer to a clerical position, or spend up to 60 days looking for a new management position within the Railroad. Borum asked if the Railroad's decision violated her settlement agreement. Neither Taylor nor McKelvie knew about the agreement, but Taylor promised to investigate. Borum said that she would let them know which option she chose after she heard back from Taylor.

Over the next few days, McKelvie told Borum's employees that Borum's position had been eliminated and made plans for Cameron to visit the Troy office. With McKelvie's permission, Borum spent that time cleaning out her office (she was paid for those days). Two or three days after their conversation with Borum, Taylor told Zunti and McKelvie that they could not eliminate Borum's position because doing so would violate her settlement agreement. McKelvie then informed Borum, Borum's staff, and Cameron that the Railroad had reversed its decision to eliminate Borum's position. Borum thereafter continued to do the same job that she had done before.

In June 2013, Borum sued the Railroad and McKelvie for employment discrimination under Michigan's Elliott-Larsen Civil Rights Act. She alleged that the defendants had discriminated against her on the basis of race by eliminating her position, and that they

eliminated her position in retaliation for her previous civil-rights lawsuit and for other discrimination reports she had made in 2011. The district court granted the defendants' motion for summary judgment. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment to the defendants. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment is proper when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

## A.

Borum first argues that the district court erred in granting summary judgment to the defendants on her discrimination claim. Under Michigan law, a plaintiff may prove a discrimination claim using circumstantial evidence under the *McDonnell-Douglas* burden-shifting framework. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001). The plaintiff must first establish a prima-facie case from which a factfinder can infer that the defendants unlawfully discriminated against her. *Id.* To establish a prima-facie case of race discrimination, Borum must show, among other things, that she suffered an adverse employment action. *Id.* at 521. An adverse employment action is a "materially adverse change in the terms and conditions of employment," such as termination, a demotion accompanied by a salary decrease, or a material loss of benefits or responsibilities. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000) (internal quotation marks omitted). De minimis employment actions, such as "temporary actions or where further remedial action is moot and no economic loss occurred," do not qualify. *Id.* at 462.

Here, Borum was told that her position was being eliminated, but that decision was reversed two or three days later. During those days, Borum's position was not in fact eliminated and Borum did not in fact choose among the three options (two of which involved potentially staying with the Railroad) that Taylor had given her. Moreover, she continued to go to the office, was paid during those days, and resumed the same job with the same title after the decision was reversed. Thus, the undisputed record shows that Borum's employer made only an unexecuted decision—reversed approximately 48-hours later—to eliminate Borum's position, and that Borum did not experience any materially adverse change in the terms or conditions of her employment. Borum therefore did not suffer an adverse employment action. *See, e.g.*, *id.* (holding that temporary loss of position was not an adverse employment action when plaintiff lost no money and remained employed full-time, and the decision was reversed in ten days).

Borum responds that we should assume that the Railroad terminated her employment because McKelvie told her that her position was eliminated and her employment status was unclear for three days. "But our inquiry is practical, not metaphysical." *Reeves v. Tenn. Farmers Mut. Ins. Co.,* 555 F. App'x 509, 512 (6th Cir. 2014). Even if Borum's exact employment status was unclear for three days, the undisputed evidence showed that she did not experience any material change to her employment during those three days. "[W]hen an otherwise adverse employment action is rescinded before the employee suffers a tangible harm, the employee has not suffered an adverse employment action." *Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005). Here, Borum lost no pay and could not identify any resulting disruptions to her relationships with her co-workers or supervisor. Her argument therefore fails. *See, e.g.*, *Chen v. Wayne State Univ.*, 771 N.W.2d 820, 840 (Mich. Ct. App. 2009).

Borum next contends that the Railroad cannot avoid liability "by attempting to make [her] whole retroactively." She relies on *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-73 (2006), in which the employer argued that a 37-day suspension without pay could not qualify as a materially adverse employment action for purposes of a retaliation claim because the employer reinstated the plaintiff with backpay. The Court rejected that argument, reasoning that backpay could not remedy the injury caused by a 37-day loss of income. *Id.* at 72-73. Here, in contrast, Borum never lost a day of pay and the Railroad had no need to give her retroactive relief. So this argument fails as well.

Thus, Borum failed to establish a prima-facie case of discrimination.

B.

Borum also argues that the district court erred in granting summary judgment to the defendants on her retaliation claim. To establish a prima-facie case of retaliation, Borum must show four elements: first, that she engaged in protected activity; second, that the defendants knew about that activity; third, that the defendants took an employment action adverse to her; and fourth, that the protected activity and adverse action were causally connected. *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001). The parties agree that Borum engaged in protected activity twice: once when she filed a discrimination lawsuit in 1999, and again when she reported discrimination against two other employees to Human Resources in 2011.

To establish the defendants' knowledge, Borum must show that the decision-makers— her supervisor McKelvie and McKelvie's boss Zunti—knew about her protected activity before they decided to eliminate her position. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). But Borum has offered no evidence that McKelvie or Zunti knew about her 2011

discrimination reports before they made their decision. She likewise has not offered any evidence that McKelvie knew about her 1999 lawsuit before the decision.

Borum did offer evidence that Zunti knew about the 1999 lawsuit. But knowledge alone is not enough; she must also demonstrate a causal connection between the lawsuit and the decision to eliminate her position. *See West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003) (per curiam). Here, the only evidence of a causal connection is that the lawsuit happened first—twelve years before Zunti's decision. That evidence is not enough, standing alone, to show a causal connection. *See id.* at 472-73. Thus, Borum failed to establish a prima-facie case of retaliation.

## C.

Finally, Borum argues that the district court should not have applied the *McDonnell-Douglas* analysis to her claims because she offered direct evidence of discrimination. Direct evidence "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle*, 628 N.W.2d at 520 (internal quotation marks omitted). Borum complains about a wide range of her employer's actions—taking place over 15 years or so—which she says caused her stress or inconvenience at work. For example, she says that the Railroad moved some of her staff to a different office, which increased the difficulty of supervising them. She also says that McKelvie once delayed her on the phone, which caused her to travel in bad weather. But she offers no evidence that connects any of these actions to the decision to eliminate her position in 2012. Thus, Borum has failed to offer direct evidence that the defendants eliminated her position because of her race or in retaliation for her protected activity. The district court correctly awarded summary judgment to the defendants under the *McDonnell-Douglas* framework.

The district court's judgment is affirmed.