HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part. I agree with my colleagues that Reedy’s Worker’s Disability Compensation Act claim was properly dismissed. Regarding the marital-status discrimination claim, however, I conclude that Reedy established a prima facie circumstantial-evidence case and presented sufficient evidence of pretext to survive summary judgment. I. The facts viewed in the light most favorable to Reedy are that around 2:00 a.m. on Thursday, January 29, 2015, while driving to his second stop, Reedy called night dispatch to report that there were whiteout conditions due to heavy snowfall and that the roads were bad. Night dispatch told Reedy to be careful, at which point Reedy’s truck went into a 360 degree turn. After Reedy reported that his truck had spun, night dispatch responded, “get to a safe place and go home.” PID 366/Reedy dep. Reedy found a truck stop at which to legally'park the truck and called a friend to pick him up. Reedy testified that he called night dispatch with the location of his truck around 6:00 a.m. When he got home at around 6:00 or 7:00 a.m., he let his babysitter go home. Because schools were closed due to bad weather Reedy’s five children stayed home that day. PID 366/ Reedy dep. Night dispatch left a note for day-dispatcher and' driver-manager Oliver Arce saying that Reedy had parked his truck at a truck stop due to bad weather. Arce started work at 6:00 a.m. (central time, being located in Arkansas) PID 389, 392/ Arce dep. Reedy testified that Arce called Reedy at 10:00 a.m. (eastern time) and told him to retrieve his truck and continue his route, Reedy testified that when he told Arce that he could not find another babysitter, Arce responded, “I don’t give a f**k about your kids. Get your f**king ass in that truck because that’s where we need to have you.” Reedy replied, “I can’t leave my kids. You going to let me take my kids with me?” PID 366-67/Reedy dep. Reedy testified that Arce hung up on him; Arce denied hanging up on Reedy. PID 391/ Arce dep. Reedy testified that at about 11:00 a.m. (eastern time) the same day, safety director Sam Lister called him and inquired whether he was a single parent. Reedy said he was, and Lister responded that he would not have hired Reedy had he known he was a single parent. PID 363, 365 (clarifying that Lister called him on the morning of January 29)/Reedy dep. Lister denied making any such comment. Dispatcher Arce testified that he called Reedy on the 29th to set up arrangements because we organized another driver to go there and pick up his partially loaded trailer and bring him an empty trailer for his upcoming run. I had to get ahold of him so he could go down and disconnect the truck from the trailer so the other driver could pick it up. PID 390/Arce dep. Arce testified that he spoke to Reedy again that day and learned that Reedy drove down with his children, disconnected the truck from the trailer. The other driver picked up the trailer. Terry was supposed to connect to the empty, and because he had his children, I let him know that he wasn’t able to drive the truck back at that time because company policy is you don’t allow more than one passenger above the age of 12 and he couldn’t drive the truck back with his kids. He drove his personal vehicle back home and was supposed to make arrangements to pick the truck and trailer up. PID 390/Arce dep.[1] On Friday, January 30, the beginning of Reedy’s regularly scheduled time off, the snowstorm was ongoing, and Reedy informed dispatcher Arce that he could not retrieve the truck because he could not find a babysitter and the roads wére unsafe. Dispatcher Arce testified that he did not work on Saturday, January 31 or Sunday, February 1. Reedy testified that he next heard from Rich Transport around 9:00 p.m. on Sunday, February 1, when a driver named Mike, whom Reedy had never met, called Reedy and said he was coming to get Reedy’s truck and trailer. Reedy testified that Mike “said I was on medical leave .... He said he was told by the company to come get my truck because I was on medical leave.” PID 143, 154/Reedy dep.[2] Reedy testified that he called night dispatch that evening, Sunday, February 1, and the night dispatcher he spoke to could not explain why Mike was being sent to pick up Reedy’s trailer. PID 156/Reedy dep. On the morning of Monday, February 2, Reedy called safety director Lister and said, “Sam, Mike told me yesterday he wants to come get my truck. I didn’t know I was on medical leave ... Where does that leave me?” Lister responded “we’re letting you go.” PID 154-55. II. I disagree with the majority’s determination that Rich presented insufficient circumstantial evidence of discrimination to survive summary judgment. Rich Transport terminated Reedy’s employment within one to three days after dispatcher Arce yelled at Reedy, “I don’t give a f**k about your kids. Get your f**king ass in that truck because that’s where we need to have you,” despite Reedy’s explanation that he was unable to find a babysitter and the blizzard conditions made it too dangerous to drive, and after safety director Lister told Reedy that he would not have been hired had Lister known he was a. single parent. These are certainly “circumstances giving rise to an inference of unlawful discrimination.” Hazle v. Ford Motor Co., 464 Mich. 456, 628 N.W.2d 515, 523 (2001) (applying the burden-shifting framework of McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973): a plaintiff establishes a prima facie case of discrimination by showing he is a member of a protected class, suffered an adverse employment action, was qualified for the position, and lost the job to another “under circumstances giving rise to an inference of unlawful discrimination.”) Rich Transport articulated a legitimate, non-discriminatory reason for terminating Reedy’s employment, that Reedy abandoned his job.[3] The burden thus shifted to Reedy to demonstrate that the articulated reason .was merely a pretext ’for unlawful discrimination, by showing either that the reason had no basis in fact, was not the actual reason for his termination, or, was insufficient to justify his termination. See Campbell v. Human Servs. Dep’t, 286 Mich.App. 230, 780 N.W.2d 586, 594 (2009). Rich Transport has not explained who decided to terminate Reedy’s employment or when that determination was made. Dispatcher Arce testified that he had .no involvement in Reedy’s termination, PID 394/Arce dep., but safety director Lister testified that dispatcher Arce told him that Reedy had voluntarily quit by refusing to retrieve the truck. PID 420. Human Resources manager Charlotte Jones, who works out of Little Rock, Arkansas, testified that she had no involvemént in terminating Reedy’s employment, had never discussed Reedy’s job performance with dispatcher Arce, and could not recall if she had discussed Reedy’s termination with safety director Lister. PID 507, 508, 510/ Jones dep. Yet when asked why Rich no longer employs Reedy, Jones responded, “It was a self termination ... that means you’re terminating your employment for not showing up to work.” PID 508/Jones dep. Jones pointed to the employee handbook provision that states, “one absent without proper notification is considered abandonment of position and is considered a voluntary termination without notice.” PID 509/Jones dep. When asked whether she was aware that, Reedy had notified dispatch when he left his truck at a truck stop due to weather conditions, she answered, “No, he didn’t notify them when he left.” Nonetheless, Jones admitted that if a driver leaves his truck and notifies dispatch, that would not be grounds for termination. PID 507/Jones dep. Viewing the facts in the light most favorable to Reedy, he did not abandon his job or refuse “to follow an order directing the retrieval of his truck.” Maj. Op. at 522. Reedy was not scheduled to work on Friday, January 30, Saturday, January 31, or Sunday, February 1. After receiving a call from the truck driver named Mike at 9:00 p.m. on Sunday, February 1, Reedy called Rich Transport and spoke to night dispatch, the only personnel available at that hour. Night dispatch could not explain to Reedy why Mike had been asked to pick up Reedy’s trailer or whether it was true that Reedy was on medical leave. Dispatcher Arce, with whom Reedy usually communicated, did not work on Saturday, January 31, or Sunday, February 1. On Monday morning, February 2, Reedy called Rich Transport and spoke to safety director Lister. Rich Transport’s counsel did not ask Reedy at deposition what time he called and spoke, to Lister on that Monday morning. In any event, Reedy testified that Lister told him in that phone conversation that his employment had been terminated. Given dispatcher Arce’s testimony that it was understandable that Reedy did not retrieve the truck on Friday, January 30 due to weather conditions, that Reedy’s route was closed on Friday due to weather conditions, that the route did not run Saturday or Sunday, PID 391/Arce dep., and Human Resources manager Jones’s testimony that if Reedy notified dispatch that he left his truck at a truck stop that would not be grounds for termination, a reasonable jury could easily conclude that neither “job abandonment” or refusal to pick up the truck was the real reason for the termination of Reedy’s employment, particularly given the termination’s close temporal proximity to Arce’s comments to Reedy about Reedy’s children and Lister’s comment that Reedy would not have been hired had Lister known that he was a single parent. Reedy presented sufficient evidence of pretext to survive summary judgment. . Reedy was not asked at deposition about meeting the other truck driver at the truck stop to disconnect the trailer from his truck. . No hearsay objection was placed on the record to Mike's statements. . Reedy did not concede that he “disobeyed the dispatcher’s order when he declined to retrieve the truck and trailer." See Maj. Op. at ' 518.