# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MAURICE J. VEILLEUX TRUST.

---

RICHARD A. POLK, Successor Trustee of the
MAURICE J. VEILLEUX TRUST,

UNPUBLISHED
July 3, 2018

Petitioner-Appellee,

and

W. GAIL VEILLEUX,

Interested Party/Appellee,

v

No. 336224
Oakland Probate Court

JAMES VEILLEUX,

LC No. 2015-367321-TV

Respondent-Appellant.

---

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

This matter arises out of the administration and distribution of a revocable trust that became irrevocable upon the death of the grantor, Maurice Joseph Veilleux, on July 13, 1998. Respondent, James Veilleux, appeals by right from the probate court's grant of summary disposition to petitioner Richard Polk and interested party Gail Veilleux, and its dismissal of James's objections. We affirm.

## I. STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

Maurice and Gail were married in 1983. At the time of their marriage, they each had children from a prior relationship. In 1993, Maurice executed a will leaving his entire estate, after payment of debts and expenses, to Gail. In the event she predeceased him, he instructed that his assets should be divided equally among her two daughters and his two sons. In 1998, Maurice was diagnosed with cancer. He retained his long-time attorney and friend, Norman L. Zemke, to draft a will and a trust. On June 26, 1998, Maurice executed the "The Maurice J. Veilleux Revocable Trust," ("the Trust") in which he placed assets, including seven closely held businesses, some of which were tied to the real estate market.

-1-

Maurice died on July 13, 1998. Three months later, Zemke sent a copy of the Trust to Maurice's and Gail's children. The named successor trustee, Comerica Bank, declined to serve as a fiduciary. Upon Zemke's recommendation, Gail selected attorney Richard A. Polk to serve as the successor trustee. Polk testified at his deposition that his major areas of practice include estate planning and estate and trust administration. He has also served as a trustee, including in instances where a bank has declined to handle the trust because it does not have a large enough value. Polk executed an acceptance of Trust on March 3, 1999. At the time, the only assets in the Trust were Maurice's minority interests in seven closely held businesses.

Polk handled all Trust receipts and disbursements through a Michigan National Bank account. For the first eleven years, he made distributions to Gail that included both interest and principal. Until the Trust assets stopped earning income, Polk provided Gail with accountings twice a year that detailed the Trust's receipts and disbursements. Because Maurice had earned in excess of $100,000 annually, Polk used that figure as a guide for making distributions to Gail.

Over time, several of the closely held businesses held by the Trust dissolved or went out of business, and the real estate market began contracting in 2005, causing Polk to decrease his distributions to Gail. Decreases that are more drastic followed in 2008, and Polk made no distributions after 2010. In 2012, one of the closely held businesses went out of business, generating a substantial income tax liability. Because the assets were no longer generating income, Polk felt he would be held personally liable if he made any distributions to Gail while the Trust had an enormous tax liability with the IRS, so he declined her requests for distribution at that time. He made no distributions to Gail in the ensuing years due to the rocky financial status and liabilities of the Trust assets. Polk ultimately sold the Trust's remaining minority interests and paid the Trust's $341,000 in tax liabilities out of the proceeds. He deposited the remainder in the Trust bank account, leaving a cash balance of $207,829.81.

Because Gail was relatively young, Polk decided that early termination of the Trust, as provided in Section 4.3 of the Trust, was in Gail's best interests, rather than allowing ongoing legal fees, accounting fees, or other expenses to further deplete the remaining principal. On December 15, 2015, Polk filed a petition with the Oakland County Probate Court seeking to terminate the Trust and distribute the remaining corpus to Gail. As an interested party to the Trust, James filed an objection to the petition on January 13, 2016. Among other things, he accused Polk and Gail of improperly invading Trust principal and mismanaging the Trust, including failing to inform and report pursuant to MCL 700.7814(2) and to issue financial disclosures pursuant to MCL 700.7814(3). He also questioned Polk's reasons for seeking to terminate the Trust. Among his requests for relief, James asked the court to issue a surcharge against the trustees for any breach of fiduciary duties.

At his deposition, James testified that he understood from conversations with his father and Zemke that Gail was only going to be receiving interest income from the Trust, with the remainder going to the children. He acknowledged receiving a copy of the Trust from Zemke soon after Maurice died and testified that from then until Polk filed the petition for termination in 2015, he had received no other information pertaining to the Trust. Although he never asked anyone to provide him with accountings or other information, he testified that Zemke assured him he would be informed of anything relevant. James agreed that after filing his objection and

requesting all financial and other information relevant to the Trust administration, Polk had since produced the requested documentation.

Polk conceded at his deposition that during his tenure as trustee, he had not kept the children beneficiaries apprised of the Trust administration and distributions except for once in 2005, when one of Gail's daughters made an inquiry, and he provided her with the requested information. He had received no other inquiries. Polk stated that Gail relied on him to perform all trust administration responsibilities and that he made all of the decisions regarding the amounts and timing of distributions to Gail.

On September 21, 2016, Polk filed a motion for summary disposition, arguing that the evidence established that the Trust was validly executed and that he had properly exercised his authority when making distributions to Gail. Polk acknowledged that James had not received any accountings during the administration of the Trust, but pointed out that he had since provided such information to James, and claimed that there were no grounds for a surcharge. On October 14, 2016, Gail filed a concurrence adopting and relying on Polk's motion and supporting brief in seeking summary disposition in her favor.

James opposed the motion and maintained that Polk and Gail had engaged in several acts of misconduct. He accused them of intentionally concealing Comerica's removal as co-trustee, quietly raiding the trust "in gross violation of their duties" and "literally commit[ing] scores of breaches" during the "entire administration" of the Trust, with Polk acting as "a virtual ATM" for Gail. Among other requests of the court, James asked that Polk be surcharged.

Subsequent to a hearing on November 2, 2016, where the parties made arguments consistent with those raised in their briefs, the probate court issued an opinion and order granting the motion for summary disposition in its entirety and dismissing James's objection. The court granted the petition to terminate the trust and distribute the remaining assets to Gail. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review a trial court's procedural decisions for an abuse of discretion. *Fast Air, Inc v Knight*, 235 Mich App 541, 550; 599 NW2d 489 (1999). We also review for an abuse of discretion a probate court's decision whether to surcharge a trustee. *In re Baldwin Trust*, 274 Mich App 387, 397; 733 NW2d 419 (2007).

We review de novo a trial court's ruling on a motion for summary disposition. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). The trial court granted summary disposition pursuant to MCR 2.116(C)(10). "A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support of a claim. After reviewing the evidence in a light most favorable to the nonmoving party, a trial court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon

which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).

"In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Smith v Globe Life Ins Co,* 460 Mich 446, 455; 597 NW2d 28 (1999). "Mere conclusory allegations that are devoid of detail are insufficient to demonstrate that there is a genuine issue of material fact for trial." *Quinto v Cross Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996).

## B.  GRANT OF SUMMARY DISPOSITION TO GAIL

James first argues that the trial court erred by considering and granting Gail summary disposition of his claims for breach of fiduciary duty and misappropriation.  We disagree.

James claims that because Gail's concurrence in Polk's motion for summary disposition was "cursory" and not filed at least 21 days before the hearing, see MCR 2.116(G)(1)(a)(*i*), it did not "qualify" as a proper motion under MCR 2.116 and, therefore, was not properly before the trial court.  He further contends that because she attached no supporting evidence, she failed to establish that there were no genuine issues of material fact regarding his claims against her. However, in her October 14, 2016 concurrence, Gail expressly indicated that she relied on and incorporated by reference the recitation of facts, application of law to the facts, and legal arguments set forth in Polk's motion, and she specifically asked for summary disposition in her favor.  Polk's motion sought dismissal of James's objection to the petition for early Trust termination as well as his associated requests for relief regarding the trust administration. Although Gail filed her concurrence 19 days before the hearing rather than at least 21 days, because she did not inject any new arguments or evidence, James had a full and fair opportunity to address and support his claims against her.  And in fact, he did address his claims against her in his brief.  Thus, the trial court did not abuse its discretion in choosing to evaluate whether James had raised any genuine issues of material fact with respect to Gail's involvement in the Trust administration and distributions.  See *Fast Air, Inc*, 235 Mich App at 550.  Any failure to hold Gail to a 21-day notice of her joining in the motion for summary disposition caused James no prejudice under the circumstances presented.

Substantively, Gail was entitled to summary disposition.  Section 3.4.C of the Trust provided that Gail, as the spouse of the grantor, "shall not exercise or join in the exercise of any power" that "would be for her own direct or indirect benefit as a beneficiary," which would include any distributions.  Those decisions were only to be made by the other trustee.[1]  Both Polk and Gail testified that Gail had no say with regard to distributions made to her.  Their deposition transcripts were provided to the probate court in support of the motion for summary disposition, and James produced no evidence to contradict this evidence.  James produced no evidence to establish that Gail procured any money from the Trust other than through Polk's distributions. Because there was no genuine issue of material fact regarding whether Gail misappropriated

---

[1] Gail was also a trustee.

Trust assets, and because no damages arose from any failure by her as a trustee to provide annual accountings to the children beneficiaries, which we discuss elsewhere in this opinion, the trial court did not err in considering and granting summary disposition in Gail's favor.

## C. BREACH OF TRUST, SURCHARGE

James next argues that the trial court erred in dismissing his claims against Polk and Gail for breach of trust and in not levying a surcharge against Polk for failure to fulfill his statutorily mandated duties. Again, we disagree.

When interpreting a trust instrument, the terms of the trust prevail over any provision of the Michigan Trust Code (MTC), MCL 700.7101 *et seq*., with certain enumerated exceptions. MCL 700.7105. "When interpreting the meaning of a trust, this Court must ascertain and abide by the intent of the settlor. We must look to the words of the trust itself." *In re Miller Osborne Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013).

According to Section 4.6 of the Trust, the trustee "shall render to each of the beneficiaries of this Trust an annual accounting of all receipts and disbursements in relation to the trust account, including an inventory of the trust estate held in trust for such beneficiary." In addition, a trustee has a duty to furnish information to beneficiaries and trust distributes pursuant to MCL 700.7814, which provides in relevant part:

(2) A trustee shall do all of the following:

(a) Upon the reasonable request of a trust beneficiary,[2] promptly furnish to the trust beneficiary a copy of the terms of the trust that describe or affect the trust beneficiary's interest and relevant information about the trust property.

(b) Subject to subsection (6),[3] within 63 days after accepting a trusteeship, notify the qualified trust beneficiaries[4] of the acceptance, of

---

[2] MCL 700.7103(*l*) defines a "trust beneficiary" as a person who "has a present or future beneficial interest in a trust, vested or contingent[,]" or who "holds a power of appointment over trust property in a capacity other than that of trustee."

[3] Subsection 6 has no effect on our analysis.

[4] MCL 700.7103(g) defines a "qualified trust beneficiary" as "a trust beneficiary to whom 1 or more of the following apply on the date the trust beneficiary's qualification is determined:

(i) The trust beneficiary is a distributee or permissible distributee of trust income or principal.

(ii) The trust beneficiary would be a distributee or permissible distributee of trust income or principal if the interests of the distributees under the trust described in subparagraph (i) terminated on that date without causing the trust to terminate.

the court in which the trust is registered, if it is registered, and of the trustee's name, address, and telephone number.

*  *  *

(3) A trustee shall send to the distributees or permissible distributees of trust income or principal, and to other qualified or nonqualified trust beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust property and, if feasible, their respective market values, and, if applicable, any disclosure required under section 7802(5). . . .

A violation by a trustee of a duty the trustee owes to a trust beneficiary is a "breach of trust." MCL 700.7901(1). Among the options the MTC provides courts for remedying a breach of trust, a court "may" "[c]ompel the trustee to redress the breach of trust by paying money, restoring property, or other means." MCL 700.7901(2)(c). Compelling the trustee to redress a breach of trust by paying money or otherwise restoring property is typically called a "surcharge." According to MCL 700.7902:

> A trustee who commits a breach of trust is liable to the trust beneficiaries affected for whichever of the following is larger:
>
> (a) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred.
>
> (b) The profit the trustee made by reason of the breach.

In the instant case, it is undisputed that Zemke sent James a copy of the Trust soon after Maurice's death, so James was aware of its existence and terms. Polk conceded that after his appointment as trustee in 1999 he did not send any communications or annual accountings to the beneficiaries who were not then eligible to receive income or distributions, other than to respond to a request for information from one of Gail's daughters in 2005. He also noted that for the six years preceding his filing the petition, there had been "no receipts, so there have been no accountings."

James contends that the trustees' failure to provide an annual accounting and other Trust administration information to the children beneficiaries constitutes a breach of their duties under MCL 700.7814 (2) and (3). As a result, James claims that the probate court erred in declining to surcharge them for their breaches. However, pursuant to the plain language of MCL 700.7901(2), the court "may" choose among a number of options to remedy a breach of trust that

---

(iii) The trust beneficiary would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

has occurred. Ordering remedial action, including a surcharge, was permissive, not mandatory. Because Polk has since provided the information to James, and because there is no evidence to support a finding that an earlier failure to keep the children beneficiaries informed caused any harm to either the Trust or the children beneficiaries' interests, the probate court did not abuse its discretion in declining to issue a surcharge. See *In re Baldwin Trust*, 274 Mich App at 397.

James also takes issue with the probate court's ruling by contending that granting summary disposition pursuant to MCR 2.116(C)(10) was improper. Citing the court rule, James claims that summary disposition is only proper when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Because the probate court focused on damages, rather than liability, James contends that the court got the rule "exactly backwards." Polk correctly points out that James misapprehends the meaning of the court rule. While courts can grant summary disposition with respect to liability and reach the issue of damages later, courts can also grant summary disposition based on a lack of damages where damages is an element of the claim. See *Neubacher v Globe Furniture Rentals, Inc*, 205 Mich App 418, 420; 522 NW2d 335 (1994).

In the instant case, the probate court was essentially issuing a substantive decision accepting as true, as admitted by Polk, the failure to keep the children beneficiaries informed about the Trust administration, yet denying the relief requested due to a lack of any resulting harm. See *In re Baldwin Trust*, 274 Mich App at 400. Moreover, as Polk and the probate court pointed out, even if James had proven a loss to the Trust due to any alleged breaches, any surcharge would simply go into the Trust, and those damages could be distributed to Gail, the sole eligible recipient of Trust income and principal during the course of her lifetime, as is set forth in Section 2.5 and 2.6 of the Trust.[5] See MCL 700.7901(c). The probate court properly exercised its discretion in declining to surcharge either Polk or Gail under MCL 700.7901.

To the extent James argues that Polk or Gail engaged in intentional concealment with respect to notification of his appointment or the Trust's administration, he has abandoned this issue by failing to cite any supporting evidence or caselaw. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . nor may he give issues cursory treatment with little or no citation of supporting authority.")

## D. APPOINTMENT OF SUCCESSOR TRUSTEE

James next contends that the trial court erred by dismissing his claims against the fiduciaries for breach of their duties concerning the appointment of a successor trustee. We detect no error.

Maurice had selected Comerica Bank of Detroit, Michigan, to serve as the successor co-trustee upon his death, but Comerica Bank was not obligated to accept the trusteeship, and in fact, it declined to serve. In the event Comerica Bank did not accept the appointment as

---

[5] James has identified no personal loss to the children beneficiaries arising from a failure to receive annual accountings other than claiming that he would have opposed the distributions Polk made. We address his objections to the distributions elsewhere in this opinion.

successor trustee, the Trust dictated that the steps set forth in Section 7.4, regarding the selection of a successor trustee, be followed. According to Section 7.4, the "living adult beneficiaries" of the Trust "then eligible to receive income" under the Trust "shall select and appoint a successor trustee." At the time Comerica Bank declined to serve as successor trustee, the only living adult beneficiary then eligible to receive income under the Trust was Gail, notwithstanding James's creative attempt to read into the Trust income eligibility on the part of the children beneficiaries. According to the plain language of the Trust, the children beneficiaries would only be eligible to receive distributions, including income, "[u]pon the death of the Grantor's spouse." Thus, the children beneficiaries were not entitled to participate in the selection of a successor trustee after Comerica Bank declined to serve. *In re Miller Osborne Perry Trust*, 299 Mich App at 530 ("When interpreting the meaning of a trust, this Court must ascertain and abide by the intent of the settlor. We must look to the words of the trust itself.").

To the extent James contends that Gail and Polk intentionally concealed Polk's appointment as successor trustee, implying illicit purposes associated with the Trust administration, he fails to provide any supporting evidence. Gail testified at her deposition that she selected Polk at the recommendation of Zemke. Polk practiced in the area of estate and trust administration, and he executed an acceptance of Trust on March 3, 1999. He had no prior relationship with either Maurice or Gail, and there is no evidence of any collusion or attempt to intentionally conceal Polk's appointment from the children. Although Polk did not notify the children beneficiaries of his acceptance of the trusteeship or provide them with annual accountings, he testified that he believed he was to provide this information to the current beneficiary, not the contingent future beneficiaries. When one of Gail's daughters contacted Polk in 2005 to obtain information regarding the Trust administration, he gave it to her. Meanwhile, James made no effort after receiving a copy of the Trust in 1998 to obtain any information regarding the appointment of Maurice's successor trustee or other updates relating to the Trust administration in the ensuing 18 years. Because the children had no say in the successor trustee selection and appointment process, and there is no evidence of any intentional concealment associated with Polk's appointment, the trial court did not err in dismissing James's objection. See *Quinto*, 451 Mich at 371-372.

## E. FAILURE TO CREATE SUB-TRUSTS

James next contends that the trial court erred in dismissing his claim against the fiduciaries for failure to divide the trust into a Marital Trust and a Family Trust. Once again, we must disagree.

According to Section 2.3.B. of the Trust, if Gail survived Maurice, the trustee was required to "allocate the assets subject to the terms of this instrument to two trusts, to be known as the Marital Trust and Family Trust, as follows . . . ." The Trust provided detailed instructions relative to this subdivision. Assets to be allocated to the Family Trust included "[a]ny assets or the proceeds thereof with respect to which a marital deduction under the federal estate tax would not be allowable." Assets to be allocated to the Marital Trust included "an amount which shall equal in value the maximum allowable marital deduction as finally determined for federal estate tax purposes . . . which . . . will result in the federal estate tax imposed on the Grantor's estate being zero or the smallest possible amount." The Trust further stated, "Subject to the foregoing,

the Trustee's decision as to which assets shall be distributed in satisfaction of the amount given to the Marital Trust shall be conclusive and binding on all persons."

It is undisputed that Polk failed to allocate the assets into sub-trusts. However, as the probate court noted, the impact of failing to do so during Gail's lifetime (other than for tax purposes) is indiscernible. According to Section 2.5.A of the Trust, Polk was required to distribute "all of the net income" from the Marital Trust to Gail "in convenient installments, but not less frequently than quarter-annually." Pursuant to Section 2.5.C, Polk also had the "power to distribute to or for the benefit of [Gail], from time to time, so much or all of the principal of the Marital Trust as [Polk], in [his] discretion, shall determine to be in the best interests of [Gail]." Upon Gail's death Section 2.5.D provided that,

> the entire remaining principal of the Marital Trust, together with any accumulated, accrued, or received and undistributed income shall be paid over, conveyed, and distributed free from the Trust hereby created, to or in favor of such persons or to the estate of [Gail] in such manner and in such proportions, in trust or otherwise, as [Gail] may appoint in and by [her] Last Will and Testament.

In other words, any assets and income allocable to the Marital Trust were always going to go to Gail, and after her death, to her chosen beneficiaries. As for the Family Trust, Section 2.6 directed Polk as trustee to pay net income and distribute principal "from time to time to or for the benefit of [Gail] at such times and in such amounts as [Polk] in [his] sole discretion shall determine." Pursuant to Section 2.6.B., Trust provisions regarding distributions to the children beneficiaries were not to become effective until after Gail's death.

Because Gail is still living, she has been and remains the sole currently eligible recipient of Trust income and principal from both the Marital Trust and the Family Trust. As such, the probate court did not err in concluding that Polk's failure to allocate the assets into sub-trusts did not cause a loss to the Trust or the children beneficiaries, and correspondingly, it did not abuse its discretion in declining to issue a surcharge against Polk under MCL 700.7901(2)(c). See *In re Baldwin Trust*, 274 Mich App at 397.

## F. DISTRIBUTION OF TRUST PRINCIPAL

James next argues that the probate court erred by dismissing his claim against the fiduciaries for improper invasion of the trust principal. Again, we detect no error.

Pursuant to MCL 700.7801, "[u]pon acceptance of a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with [the MTC]." A trustee abuses the trustee's discretion with respect to discretionary distributions if the trustee acts dishonestly, acts with improper motive, or fails to exercise judgment in accordance with the terms and purposes of the trust. MCL 700.7815(1). James baldly asserts that Polk's distributions to Gail satisfied these requirements.

As previously indicated, according to the clear and unambiguous language of the Trust, Polk had the "power to distribute to or for the benefit of [Gail], from time to time, so much or all of the principal of the Marital Trust as [Polk], in [his] discretion, shall determine to be in the best

interests of [Gail]." And with respect to the Family Trust, Polk had authority to pay to Gail "[s]o much of the principal . . . from time to time to or for the benefit of [Gail] as [Polk] in [his] sole discretion shall determine." Put simply, distributions to Gail from principal that was earmarked to eventually go to James and the other children beneficiaries after Gail died, if there was anything left, were made at Polk's "sole discretion." The Trust expressly indicated that such distributions of principal were to be paid "for the benefit" of Gail. Polk provided an explanation and an accounting showing how he determined the appropriate amount of money to distribute to Gail each year. James has produced absolutely no evidence to create a material question of fact regarding whether Polk abused his discretion when distributing principal from the Trust to Gail, nor has he made any substantive legal argument beyond his bare assertions.

Although James continues to point out his father's alleged representation that the Trust principal was intended to be preserved for distribution to the children beneficiaries upon Gail's death, the plain and unambiguous language of the Trust expressly allowed Maurice's successor trustee to distribute Trust principal to Gail throughout her lifetime at the trustee's discretion.[6]

Finally, James contends that the trial court erred in dismissing his objection to the petition for early termination of the trust and distribution of the assets. The trustee's option of terminating the Trust early is expressly laid out in Section 4.3, which gives the trustee discretion when to do so. James fails to provide any substantive argument in opposition to early termination other than to reiterate the alleged breaches of trust described above. Given our conclusion that the probate court did not err in dismissing James's objection and prayers for other relief associated with the conduct of the fiduciaries, James is not entitled to relief on this issue. See *Houghton ex rel Johnson*, 256 Mich App at 336.

Affirmed.

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[6] James does not allege that Polk financially mismanaged the Trust assets or violated the Michigan prudent investor rule. See MCL 700.1505.