*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRINA TURNER,

UNPUBLICATION
April 23, 2020

Plaintiff-Appellant,

v

No. 345727
Wayne Circuit Court
LC No. 17-006018-CD

FORD MOTOR COMPANY,

Defendant-Appellee.

Before: RIORDAN, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Plaintiff brought this action alleging race discrimination in employment, as well as retaliation for reporting race discrimination. The trial court granted defendant's motion for summary disposition. Because plaintiff has failed to establish entitlement to appellate relief, we affirm.

## I. BACKGROUND

Plaintiff is multiracial and identifies as African-American. She began working for defendant in 1993 and held a number of engineering positions. Beginning in 2012, her attendance became irregular. In early 2015, Tony Greco supervised plaintiff in the Special Vehicle Teams department. In March 2015, plaintiff was allowed to transfer to defendant's Vehicle Integration department, where Christina Hunter served as her new supervisor. As plaintiff was transitioning to Vehicle Integration, she filed a formal complaint with defendant's human-resources department regarding allegedly inappropriate comments that Greco had made regarding Asians and Mexicans. The human-resources staff investigated the complaint, and Greco explained what he meant by the comments, stated that plaintiff had taken the comments out of context, and indicated that he did not mean the comments to be offensive.

Shortly after transferring to Vehicle Integration in April 2015, Hunter noticed plaintiff's attendance and performance deficiencies, which continued throughout 2015. In December 2015, plaintiff failed to attend two meetings at which she was supposed to make presentations. In the 2015 year-end-performance review of plaintiff, Hunter gave plaintiff an average rating but noted her failure to make the required presentations in December 2015. Plaintiff made numerous

-1-

complaints about this comment and was allowed to submit a written rebuttal to be attached to the evaluation. Plaintiff complained to the personnel-relations department that she was being unfairly treated as "the only black in [Hunter's] section." The personnel-relations staff investigated the matter and determined that plaintiff's complaint was unsubstantiated.

In March 2016, plaintiff unsuccessfully sought a transfer to positions in the Project Management department. According to defendant, it denied plaintiff's transfer requests due to a budgetary freeze on hiring persons outside a given department.

In April 2016, plaintiff filed a complaint against defendant with the federal Equal Employment Opportunity Commission (EEOC), alleging age and race discrimination as well as retaliation for making her earlier complaint about Greco's comments. The EEOC dismissed the charge, finding that there was no statutory violation.

Meanwhile, plaintiff continued to perform her work in a manner that created difficulties, including by failing to attend or cancelling meetings. In May 2016, plaintiff filed another complaint against defendant with the EEOC, this time claiming that the denial of her request for a transfer to the Project Management department was in retaliation for her filing of her earlier EEOC complaint. The EEOC dismissed this charge, finding that there was no statutory violation.

In June 2016, Hunter met with her supervisor, Dawn Paluszny, along with human-resources representative Mickey Mikonczyk and personnel-relations representative Pam Pierce, to discuss plaintiff's continuing performance and attendance deficiencies. They decided to implement a performance-enhancement plan (PEP) to provide plaintiff with coaching and feedback on how to meet the objectives of her position. Hunter prepared the PEP from a sample document provided by Pierce. The goal was for plaintiff to satisfy the objectives of the PEP by August 11, 2016.

On July 27, 2016, plaintiff sent an e-mail to Mikonczyk objecting to the PEP in various respects. Plaintiff objected most strenuously to an example provided in the PEP for one of the desired behaviors identified in the PEP, i.e., transparency; the PEP provided an example of this goal by stating, "Answer the question asked—simply with a yes or no; followed by relevant statements if needed." Plaintiff claimed that this language implied "discriminatory racial undertones." Hunter saw nothing discriminatory about this language, which she had obtained from the sample document provided by Pierce, but Hunter nonetheless removed the language at issue and replaced it with other language.

Plaintiff's performance and attendance problems purportedly continued during the PEP period. Defendant maintained that plaintiff performed inadequately in meetings and was absent from work 25% of the time. She was argumentative in meetings and blamed others for her issues. On August 12, 2016, defendant extended the PEP to continue efforts to improve plaintiff's performance. Plaintiff responded to the extension by suggesting that her performance was not deficient and that the PEP was being used as a tool to discriminate against her based on her race. On August 18, 2016, plaintiff began a three-month leave of absence to have surgery on her feet.

When plaintiff returned to work on November 10, 2016, she received a notice of performance coaching and counseling that extended the end date of her PEP to December 1, 2016.

The notice provided that "[f]ailure to demonstrate significant and sustained improvements by 12/1/2016 [will] result in separation under the terms of the Career Transition Program."

Meanwhile, personnel-relations manager Susan Moseley agreed to conduct a further review of plaintiff's claims that she was being unfairly treated. Moseley met with plaintiff on August 17, November 15, and November 16. In addition to her three meetings with plaintiff, Moseley conducted an extensive investigation that included interviewing numerous persons and reviewing documentation submitted regarding plaintiff's complaints. Moseley found no evidence of discrimination and concluded that defendant's employment policies and processes were followed properly. On November 30, 2016, Moseley informed plaintiff that the investigation was being closed.

According to Paluszny, plaintiff failed to make any progress on achieving the objectives of her PEP; instead, plaintiff used vacation time for the week of Thanksgiving 2016 "and otherwise spent her time arguing about why she thought she should not be on a PEP in the first place." Paluszny, Hunter, and Mikonczyk held a meeting and decided to recommend to upper management that defendant terminate plaintiff's employment because of her lack of progress under the PEP, her attitude regarding efforts to improve her performance, and her continuing performance deficiencies and failure to satisfy the objectives of her position. After upper management approved the recommendation, defendant terminated plaintiff's employment in December 2016. In March 2017, plaintiff obtained a job at Toyota making more money than she did with defendant.

On April 20, 2017, plaintiff commenced this action against defendant by filing a complaint alleging race discrimination and retaliation for reporting race discrimination. Plaintiff alleged that Hunter was friends with Greco and that she retaliated against plaintiff for her complaints about Greco, including by changing plaintiff's job duties, failing to give critical-work assignments to plaintiff, and failing to notify plaintiff of meetings where she was required to make a presentation. Plaintiff claimed she was treated differently from her white peers, including by being denied the opportunity to work from home. Hunter allegedly handled meetings or assignments for other employees who were out sick or on vacation but refused to provide the same support to plaintiff. According to plaintiff, she tried to call in to one of the December 2015 meetings to participate by telephone but then learned that Hunter was already conducting the meeting and had rescheduled plaintiff's portion of the meeting for a later date. Plaintiff claimed that Hunter falsified information on plaintiff's 2015 performance evaluation. Plaintiff alleged that the denials of her transfer requests in 2016 were due to her filing of a complaint against defendant with the EEOC. Plaintiff noted that it was only after she made complaints about racial discrimination that defendant placed her on a PEP, claimed she was performing poorly, and then terminated her employment. Plaintiff alleged that her employment was terminated because of her race and that she was harassed and retaliated against for making complaints about discrimination. In Count 1 of her complaint, plaintiff alleged race discrimination and harassment, and in Count 2, she alleged retaliation for having complained about discrimination and harassment. Plaintiff sought damages in excess of $1 million.

On June 29, 2018, defendant filed a motion for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had not established a genuine issue of material fact in support of her claims. The trial court agreed and granted defendant's motion. This appeal followed.

## II.  ANALYSIS

## A.  RACE-DISCRIMINATION CLAIM

Plaintiff first argues that the trial court erroneously granted summary disposition to defendant on her race-discrimination claim.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  A motion under MCR 2.116(C)(10) tests whether a claim is factually sufficient.  *Id*. at 160.

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion.  A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact.  A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.  [*Id*. (cleaned up).]

## 1.  ABANDONED CLAIM

Initially, plaintiff has abandoned this issue by failing to provide adequate briefing in many respects.  After summarizing legal principles, plaintiff asserts in a cursory fashion that, "pursuant to the above facts," presumably meaning the facts set forth in the fact section of her brief, she "establishes a prima facie case of discrimination."  Plaintiff does not provide any meaningful explanation of *how* the facts establish a prima-facie case.  She also alleges that she "was the victim of racial harassment which resulted in an offensive or hostile work environment[]" and again refers to "the above facts" but fails to articulate exactly how the facts of the case support her conclusion.  Plaintiff further asserts that she has presented direct evidence of discrimination but fails to identify any such direct evidence.  Plaintiff states that defendant cannot articulate a legitimate, nondiscriminatory reason for its treatment of plaintiff, but she fails to explain why this is so.  An appellant may not merely announce her position and leave it to this Court to discover and rationalize the basis for her claims, nor may she give issues cursory treatment with little or no citation of supporting authority.  *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).  That is, plaintiff cannot rely on this Court to make her arguments for her.  *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).  Plaintiff's failure to brief this issue adequately constitutes abandonment of it.  *Id*.; *Peterson Novelties*, 259 Mich App at 14.

In any event, the trial court correctly granted summary disposition to defendant on plaintiff's claim of race discrimination under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.  MCL 37.2202(1)(a) provides, in relevant part, that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race."  A plaintiff may prove unlawful discrimination through direct or indirect evidence.  *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001).  Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Id*. (cleaned up).  In the absence of direct evidence of unlawful discrimination, a plaintiff may "present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination."  *Id*.

(cleaned up). To do so, the plaintiff must present evidence that (1) she belongs to a protected class; (2) she suffered an adverse-employment action; (3) she was qualified for the position; and (4) she suffered the adverse-employment action under circumstances giving rise to an inference of unlawful discrimination. *Id*. at 463.

An inference of unlawful race discrimination may arise from evidence that the employer provided differential or unequal treatment to employees who were similarly situated in all relevant respects except for their race. *Hecht v National Heritage Academies, Inc*, 499 Mich 586, 608; 886 NW2d 135 (2016). But in order for such evidence of similarly situated employees to give rise to an inference of unlawful discrimination, "the comparable employees must be nearly identical to the plaintiff in all relevant respects." *Id*. (cleaned up).

If a plaintiff establishes a rebuttable prima-facie case of unlawful discrimination, a defendant may rebut the prima facie case by articulating "a legitimate, nondiscriminatory reason for the adverse employment action." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003). If the defendant rebuts the prima-facie case, then "the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Id*.

## 2. DIRECT EVIDENCE OF DISCRIMINATION

Although plaintiff perfunctorily asserts that she has presented direct evidence of discrimination, she identifies no direct evidence to support that assertion. *Seifeddine*, 327 Mich App at 521; *Peterson Novelties*, 259 Mich App at 14. Plaintiff claims that Greco made two racially insensitive comments, but Greco had exercised no authority over plaintiff for more than 18 months by the time of plaintiff's discharge. Also, his comments were, at worst, ambiguous and did not indicate any discriminatory bias against African-Americans in general or against plaintiff in particular. Greco's comments thus constituted, at most, stray remarks, which do not constitute direct evidence of discriminatory intent. See *Sniecinski*, 469 Mich at 136 n 8. While plaintiff's affidavit asserts in a conclusory fashion that Greco and Hunter had a prior relationship and suggests that Hunter was acting on behalf of Greco, this is mere conjecture. Speculation aside, there is no evidence that Greco and Hunter had any relationship other than being coworkers.

## 3. INDIRECT EVIDENCE OF DISCRIMINATION

Because plaintiff has not produced direct evidence of discrimination, her claim can survive only if she demonstrates a genuine issue of material fact under the framework for presenting indirect evidence of discrimination. Plaintiff has failed to do so.

With respect to her prima-facie case, it is undisputed that plaintiff, who identifies as African-American, is a member of a protected class. Plaintiff alleges several actions by defendant that do not amount to materially adverse employment actions. *Meyer v Center Line*, 242 Mich App 560, 569; 619 NW2d 182 (2000). Plaintiff was, however, discharged from her employment, which is a materially adverse employment action. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 363; 597 NW2d 250 (1999). Moreover, for purposes of this appeal, we will assume that she was qualified for her desired positions.

Yet, plaintiff cannot make out the fourth element of her prima-facie case. Plaintiff has failed to identify any similarly situated employee outside the protected class who was treated differently. The "comparable employees must be nearly identical to the plaintiff in all relevant respects." *Hecht*, 499 Mich at 608 (cleaned up). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v Gilley*, 385 F3d 683, 691 (CA 6, 2004). There is no evidence of any employees working in Vehicle Integration who had attendance or performance deficiencies similar to plaintiff or who were required to be placed on a PEP. At her deposition, plaintiff was unable to identify any similarly situated employees who were treated more favorably than her. Moreover, although an inference of discriminatory animus may be supported by evidence that the plaintiff was replaced by someone outside the protected class, *Feick v Monroe Co*, 229 Mich App 335, 338; 582 NW2d 207 (1998), plaintiff was not replaced by anyone; after plaintiff's discharge, her duties were reallocated to Hunter and other employees. And as noted earlier, Greco's alleged racial comments do not support an inference of discriminatory animus given that he was not a decisionmaker regarding any alleged adverse employment action and there was no evidence that Greco had any influence on Hunter's decisions.

Furthermore, defendant has articulated a legitimate, nondiscriminatory reason for its discharge of plaintiff. She exhibited numerous attendance and performance deficiencies. Defendant attempted to provide informal coaching to plaintiff to improve her attendance and performance issues, and when those efforts failed, plaintiff was placed on a formal PEP. Plaintiff failed to make any improvement while on the PEP and instead argued that she should not be on the PEP and blamed others for her deficiencies. Defendant extended the PEP period beyond the original expiration date, and plaintiff still did not make improvement. Defendant discharged plaintiff when the extended PEP period ended. Also, the denial of plaintiff's transfer to Project Management was based on a freeze on hiring persons outside that department. These facts establish legitimate, nondiscriminatory reasons for any adverse employment action.

Finally, plaintiff has failed to present evidence that defendant's articulated nondiscriminatory reasons for discharging plaintiff constituted a pretext for unlawful discrimination.

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick*, 229 Mich App at 343.]

Plaintiff offers no argument that defendant's proffered reasons for discharging her were a pretext for discrimination other than to make a cursory assertion that she had no performance issues. But there was extensive evidence of plaintiff's attendance and performance deficiencies that defendant tried to help plaintiff improve. Plaintiff's mere disagreement with defendant's judgment regarding her performance fails to establish that defendant's proffered reasons are pretextual. "The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Hazle*, 464 Mich at 476 (cleaned up). "The soundness of

an employer's business judgment . . . may not be questioned as a means of showing pretext." *Dubey v Stroh Brewery Co*, 185 Mich App 561, 566; 462 NW2d 758 (1990).

Plaintiff also suggests that defendant lied regarding the reasons for denying her requests for a transfer to Project Management. The record does not support that contention. Plaintiff relies on deposition testimony of Shelia Thompson, a Project Management supervisor who was interested in making an offer to plaintiff when she sought a transfer. Thompson testified that she was told by upper management not to make an offer to plaintiff, that Thompson was not given a reason for this directive, and that Thompson was not informed about a freeze on hiring persons from outside the department. But the fact that Thompson, a lower-level supervisor, was unaware of a hiring-freeze decision imposed by upper management does not establish that no hiring freeze existed or that any agent of defendant lied regarding the existence of the hiring freeze. To the extent that Thompson's testimony is read to suggest that no hiring freeze existed, her testimony amounts only to speculation because there is no evidence that she had personal knowledge of all upper-management decisions. See MRE 602. A party opposing a motion for summary disposition must present more than speculation or conjecture in order to demonstrate a genuine issue of material fact. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723; 909 NW2d 890 (2017).

In sum, plaintiff failed to present direct or indirect evidence of race discrimination. Therefore, the trial court properly granted summary disposition to defendant on plaintiff's race discrimination claim.

## B. RETALIATION CLAIM

Plaintiff next argues that the trial court erroneously granted summary disposition to defendant on plaintiff's retaliation claim.

MCL 37.2701 provides, in relevant part:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of [the Civil Rights Act], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the Civil Rights Act].

To establish a prima-facie case of unlawful retaliation, a plaintiff must demonstrate: "(1) that he engaged in a protected activity, (2) that this was known by defendant, (3) that defendant took an employment action adverse to plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 533; 854 NW2d 152 (2014). "To establish causation, the plaintiff must show that [her] participation in activity protected by the [Civil Rights Act] was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004) (cleaned up). Moreover, to demonstrate causation, the "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *West v Gen Motors Corp*, 469

Mich 177, 186; 665 NW2d 468 (2003). If the plaintiff meets the initial burden of establishing a prima-facie case of retaliation, then the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action, and if that burden is met, then the plaintiff has the burden to prove that the proffered reason was a pretext for unlawful retaliation. *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000).

Once again, plaintiff has abandoned this issue because her argument is cursory. *Seifeddine*, 327 Mich App at 521; *Peterson Novelties*, 259 Mich App at 14. In the section of her brief on appeal addressing this issue, plaintiff fails to identify precisely the protected activity upon which she is basing her argument. She suggests that defendant denied her requests to transfer to Project Management in retaliation for her complaints about alleged harassing behavior. Plaintiff has made numerous complaints to various entities. She does not identify what complaints and which alleged harassing behavior upon which she bases her argument. Further, plaintiff has presented no coherent argument regarding how a causal connection exists between her complaints and any adverse employment action. Again, plaintiff cannot rely on this Court to make her arguments for her. *Seifeddine*, 327 Mich App at 521. Plaintiff has thus abandoned this issue. *Id*.

In any event, the record is bereft of any evidence that a causal connection exists between plaintiff's complaints, either to defendant or the EEOC, and any adverse employment action. A mere coincidence in time is insufficient to establish causation. *West*, 469 Mich at 186. Plaintiff has offered nothing more on the element of causation. Also, the decision to discharge plaintiff was made approximately eight months after the filing of the first EEOC charge. This time lapse further undermines any argument for causation. Because plaintiff has presented no evidence of causation, the trial court properly granted summary disposition to defendant on plaintiff's retaliation claim. Also, for the reasons discussed earlier, even if plaintiff could make a prima facie case, defendant has articulated legitimate, nondiscriminatory reasons for its actions, and plaintiff has failed to present evidence that those reasons were a mere pretext for unlawful retaliation.

Affirmed. Defendant, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle