*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATASHA ATKINSON,

        Plaintiff-Appellant,

and

TERRY ISRE'AL, BRUCE ODOM, JWAN VANEZ RANDLE, and RANDALL TALIFARRO,

        Plaintiffs,

v

CITY OF LANSING, SAMANTHA HARKINS, and MAYOR OF LANSING,

        Defendants-Appellees.

UNPUBLISHED
July 18, 2025
10:11 AM

No. 368528
Ingham Circuit Court
LC No. 20-000437-CZ

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

In this race-discrimination action brought under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, plaintiff-appellant, Natasha Atkinson, appeals as of right the trial court's order granting summary disposition in favor of defendants, city of Lansing (the City), Andrew Schor (the Mayor), and Samantha Harkins (the Deputy Mayor). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Atkinson, an African-American woman, began working for the city as an office assistant in June 2019. In August 2019, Atkinson accepted a position as the Mayor's scheduler and event coordinator, primarily reporting to the Mayor, Harkins, and Nicholas Tate, the city's chief labor negotiator and chief administrative officer. She was fired in February 2020. In August 2020, plaintiff, along with other individuals, filed a complaint against defendants, asserting claims of race discrimination, harassment, and retaliation. Defendants filed a motion for summary disposition under MCR 2.116(C)(10), arguing that Atkinson failed to establish prima facie cases

-1-

with respect to each of her claims. Following a motion hearing, the trial court granted defendants' motion for summary disposition. Thereafter, the court denied Atkinson's motion for reconsideration. This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Atkinson argues that the trial court erred by granting defendants' motion for summary disposition. Challenges to a trial court's decision on a motion for summary disposition are reviewed de novo. *Chisholm v State Police*, 347 Mich App 646, 651-652; 16 NW3d 563 (2023). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 652. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the non-moving party to determine whether any genuine issues of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). A properly supported motion for summary disposition shifts the burden to the opposing party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In doing so, the nonmoving party cannot rely on mere allegations or denials, but must instead, "by affidavits or as otherwise provided in [MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 374; 775 NW2d 618 (2009) (quotation marks and citations omitted).

## B. ANALYSIS

## 1. RACE DISCRIMINATION

ELCRA prohibits employers from discriminating on the basis of race. MCL 37.2202(1)(a). There are two broad categories of claims under MCL 37.2202(1)(a), "disparate treatment and disparate impact claims." *White v Dep't of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020) (quotation marks and citation omitted). This case concerns disparate treatment because Atkinson alleges that she was intentionally discriminated against on the basis of her race. Discriminatory treatment in violation of ELCRA can be established "by direct evidence or by indirect or circumstantial evidence." *Major v Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016) (quotation marks and citation omitted). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (quotation marks and citation omitted).

On appeal, Atkinson argues for the first time that she presented direct evidence of discrimination as it relates to her claim that she was provided with less pay than her coworkers because of her race. Atkinson did not argue below, however, that there was direct evidence that she was paid less because of her race. Although a party is free to make a "more developed or sophisticated argument on appeal," *Mueller v Brannigan Brothers Restaurants and Taverns LLC*, 323 Mich App 566, 585; 918 NW2d 545 (2018), Atkinson did not make a clumsy or inartful

argument that part of her claim was established through direct evidence. Rather, she wholly failed to raise this argument in the trial court. By failing to raise this issue below, Atkinson has waived review of it on appeal. See *Tolas Oil & Gas Exploration Co v Bach Srvs & Mft, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Although the preservation requirement may be overlooked under some circumstances, *id.*, we decline to do so in this case.

In cases where there is "no direct evidence of impermissible bias, [the] plaintiff's claim of intentional discrimination must proceed under the *McDonnell Douglas*[1] burden-shifting framework." Under that framework, a plaintiff must set forth a rebuttable prima facie case by presenting evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she suffered the adverse-employment action under circumstances giving rise to an inference of unlawful discrimination. See *Hazle*, 464 Mich at 462.[2] On appeal, defendants concede that Atkinson belongs to a protected class and that she suffered an adverse employment action when her employment was terminated.[3] Accordingly, only the third and fourth elements of a prima facie case of racial discrimination are at issue, i.e., whether Atkinson was qualified for her position and whether her employment was terminated under circumstances that give rise to an inference of discrimination. See *Hazle*, 464 Mich at 465.

"An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations." *Town v Mich Bell*, 455 Mich 688, 699; 568 NW2d 64 (1997). This requires a plaintiff to show that he or she was minimally qualified for the job. See *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 369; 597 NW2d 250 (1999) ("Being qualified for a job, for purposes of establishing a prima facie case of discrimination, requires only minimal qualification."). As the Mayor's scheduler, Atkinson's role was to schedule meetings and appointments for the Mayor. The record reflects that she consistently failed to schedule important meetings, was often tardy to or missed meetings, and did not always invite necessary individuals to City events. Harkins explained that Atkinson's performance was "consistently below" expectations and unsatisfactory. The Mayor also testified that Atkinson "was not a very efficient scheduler." In her deposition, Atkinson admitted that she lacked punctuality and would sometimes miss entire meetings. She described herself as "a little disorganized" and indicated that she would skip meetings if she felt that there were "conflicting things." Atkinson further explained that she was often late to work because she had begun to look after her brother's children in addition to her own children. She stated that she told the Mayor and Harkins about the change in her

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[2] "[T]he elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Hazle*, 464 Mich at 463 n 6.

[3] On appeal, Atkinson appears to argue that she suffered an adverse employment action related to her compensation and her parking privileges. Her complaint, however, did not include any such allegations. Moreover, she did not address either contention in her response to defendants' motion for summary disposition. To the extent that she is now suggesting that she suffered adverse employment actions in connection with her compensation and parking privileges, we conclude that the issues are waived. See *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289.

circumstances, but admitted that she was pulled aside by Tate, who discussed her attendance issues with her. However, the record also reflects that she was being counseled regarding her job deficiencies and that no reprimands were placed in her file. As such, viewing the evidence in the light most favorable to her, it is reasonable to infer that she was at least minimally qualified for her job, notwithstanding the unrefuted deficiencies in her performance.

We conclude, however, that Atkinson has failed to establish that the circumstances of her adverse-employment action give rise to an inference of unlawful discrimination. *Hazle*, 464 Mich at 464. "While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*. at 470. On appeal, Atkinson directs this Court to several comments and incidents that she maintains give rise to an inference of unlawful racial discrimination. We address each in turn.

First, Atkinson presented evidence that a motivating factor in hiring her was that she was a young black woman. Although she testified below that this rationale was a "good thing," she now argues on appeal that it demonstrates that, rather than being viewed as a college-educated professional, she was merely hired to make the Mayor's office appear to be more diverse. Atkinson also notes Harkins admitted to her that she did not have a lot of experience with African Americans until she went to college. Harkins then stated that she was sexually attracted to African American men and that she liked the appearance of mixed-race children. Harkins further made crude sexual-based comments regarding the physical appearance of Tate, indicating that she was physically attracted to him. Even viewed in the light most favorable to Atkinson, Harkins's comments during the interview process suggest that the City had a bias in favor of African Americans. Similarly, Harkins's statements expressing her attraction to African American men does not give rise to an inference that she held a racial animus toward African Americans.

Second, Atkinson directs this Court to her belief that she was paid less than everyone in the Mayor's office, which she contends was as a result of her race. She explained that when she was hired, she was told that she made less than everyone but that she would receive an increase in salary in January 2020. Atkinson believed that three other employees were each making $2,000 to $4,000 more than her. One of the office workers, however, was making approximately $9,000 less than Atkinson. The other two employees, one with two years of experience and the other with one and a half years of experiences, were making $2,000 more than Atkinson when Atkinson started working, but were only making approximately $400 more than Atkinson after Atkinson had been employed by the City for around six months. The employee with one and a half years of experience is an African-American. The record, therefore, reflects that Atkinson was paid less than two other employees but was paid significantly more than a third employee. The gap between her pay and the two employees receiving a higher salary was dramatically reduced within six months of her being employed by the City. One of the employees, like Atkinson, was an African-American. Even viewed in the light most favorable to her, Atkinson's position that the disparity was the result of unlawful racial discrimination is supported only by her belief that she was paid

less because of her race.[4] That is insufficient to overcome a motion for summary disposition. See *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) (stating that "a party opposing a motion for summary disposition must present more than conjecture and speculation to establish that genuine issue of material fact exists.").

Third, Atkinson asserts that her parking space under City Hall was taken away because of her race. She also stated that when another employee offered for her to use their parking spot, the privilege was also revoked as soon as Harkins learned about it. Again, however, she supports this claim only by pointing her own feelings that this was racially discriminatory, which is insufficient to overcome summary disposition. See *id*. Moreover, defendants presented testimony that parking spaces under City Hall were given based upon seniority, not position. Further, there was evidence that other African Americans were allowed to park under City Hall.

Fourth, Atkinson states that she was present when two white employees were discussing the music that was going to be played from the lamp posts in Lansing's downtown area. She explained that she realized that no African-American artists were being included and she offered to pick out some songs by such artists. Atkinson testified that her offer was met with a joke and that one of the employees later complained about her to others. Atkinson asked Harkins if they could have a meeting regarding the incident. At the meeting, Harkins supported Atkinson and the other woman left crying. Harkins told Atkinson that the other woman did not have a lot of experience with African Americans, that the woman felt intimidated by Atkinson, and that she was concerned that Atkinson would take her job. On appeal, Atkinson suggests that this incident shows that Harkins failed to recognize that the other woman's actions were race related and that she excused the racial hostility rather than address it. She contends that, because Harkins did not address the issue, the other woman's prejudices "infected" the entire office and resulted in Atkinson being "iced out." Again, however, this is based solely upon Atkinson's belief that the actions of the other woman were made on the basis of racial prejudice. The fact that the dispute was between two women of different races and that it involved a suggestion that more music by racially diverse artistes be played does not allow for an inference that the other woman was prejudiced against African Americans. Moreover, the record reflects that Harkins acted on

---

[4] Atkinson spoke with the City's acting finance director, Shelbi Frayer, before the matter of her compensation was addressed by the Mayor in January 2020. She recalled specifically telling Frayer that she believed it was "unfair that somebody who gets to leave—come to work and leave at 5:00 gets paid more than I do when I get 2 'o'clock-in-the-morning phone calls and I'm essentially on call whenever the mayor decided to call." Further, Atkinson told Frayer that she believed she was being paid less than everyone else because of her race. Atkinson testified that Frayer "agreed with the conclusion that [Atkinson] had in her mind." Frayer also recounted that she had "strong-armed" the Mayor into paying a different African-American employee an additional $30,000 per year so that he would be making closer to what his Caucasian predecessor had been making. Frayer did not testify. Accordingly, only Atkinson's testimony regarding Frayer's alleged belief is in the record. Given that Frayer's alleged belief is based on the conclusions that Atkinson reached and on a single instance where she believed there was a racial pay disparity, Frayer's alleged opinion appears to be based upon conjecture, rather than the objective facts related *to Atkinson's pay* vis-à-vis her coworkers.

Atkinson's concerns, calling a meeting to address the matter and siding with Atkinson rather than the other woman. Harkins's actions in supporting Atkinson do not give rise to an inference of unlawful discrimination.

Fifth, Atkinson directs this Court to an incident occurring at a Christmas party. She stated that the husband of one of her coworkers told her that he usually dated African-American women, but that he had married a white woman because she had a body like an African-American woman. In response, Atkinson joked, "once you go Black, you can go back." The following day, the head of Human Resources approached Atkinson to discuss Atkinson's inappropriate racial and sexual comment. After Atkinson explained her reasons for making the comment, she was told that she "would do better to learn that the . . . rules to the game are different for every player." Atkinson responded that, as an African-American woman, she did not know what to do when someone made racist, stereotypical comments that objectified bodies or body styles. Other than being told not to respond with inappropriate sexual and racial comments, it does not appear that her question was answered. Overall, the fact that a coworker's husband allegedly made inappropriate racial and sexual comments at a Christmas party does not excuse Atkinson from also making inappropriate racial and sexual comments. Nor does it give rise to an inference that the defendants unlawfully discriminated against Atkinson.

Sixth, Atkinson notes that her office was ransacked on two occasions. She reported the incident to the Mayor and Harkins, but the matter was not investigated further. A coworker stated that the second incident must have been "personal" because no one else had experienced something similar. The coworker's speculation that the incident was "personal" does not constitute evidence that it was "personal" as a result of Atkinson's race. Moreover, the coworker's statement that it had not happened to anyone else is contradicted by the Mayor's testimony that a similar incident had occurred to his own office. Atkinson's belief that the ransacking of her office and the failure to investigate it were based upon her race are mere conjecture. As such, it cannot defeat defendant's motion for summary disposition. See *id*.

Seventh, Atkinson points to comments that Harkins made in relation to her hair while they were speaking generally about "clothes and sales in different stores." According to Atkinson, Harkins noted on one occasion that Atkinson's hair was "bushy and big" and that she imagined that Atkinson's hair made it difficult to look "professional." On another occasion, she stated that she liked the appearance of Atkinson's hair when it was straightened. Atkinson never told Harkins that she found the comments offensive or that they made her uncomfortable. Instead, when she was asked at her deposition whether she recalled Harkins saying anything "that was racially insensitive," Atkinson answer, "No, not towards me." When asked if she overheard Harkins making any racially insensitive remarks, she recalled that after Harkins had an argument with a different African American employee, she heard Harkins say that "maybe rightfully so" African American women had a "chip on their shoulder" and needed "to learn how to get along." Atkinson stated that she just "brushed" that comment off and that she did not report it to anyone. Viewed in isolation, these comments could be construed as racially insensitive and offensive. They do not, however, give rise to an inference of unlawful discrimination.

Finally, Atkinson asserts that, after trying to find a legitimate reason to terminate her, defendants made up some unfounded and untrue reasons to do so. Specifically, a coworker alleged that Atkinson told people "that she wanted to burn down city hall." She denied making such a

statement and asserts that the comment was not investigated because it was being used as a pretext to terminate her employment. Atkinson also complained that there were "unfounded" allegations that she was revealing confidential information related to another employee. Yet, she admitted that she spoke to the employee who was under federal investigation and that she advised that employee that she was going to be suspended. Although she was asked to speak with the employee to encourage her to cooperate with the federal investigation, she admitted that she was not authorized to tell the employee that she would be suspended. Further, she acknowledged that this was confidential information and that sharing such information was a terminable offense.

Atkinson alleges that the allegation that she disclosed confidential information was used to give Tate access to her e-mail. Once in her e-mail, Tate discovered that she had e-mailed a potential employee's resume to herself. Tate classified that disclosure as a breach of confidentiality. He stated that he did not know how Atkinson had gotten a copy of the e-mail, but noted that she should not have it. The Mayor confirmed that he had given the resume to Atkinson so she could call the potential employee to schedule an interview. He did not, however, indicate that he had authorized her to e-mail it to her personal address.

"A plaintiff can attempt to prove discrimination by showing that the plaintiff was treated unequally to a similarly situated employee who did not have the protected characteristic." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 608; 886 NW2d 135 (2016). An inference of unlawful discrimination can also arise where an employer engages in "differing treatment of employees who were similar to the plaintiff in all relevant respects, except for their race . . . ." *Id*. Atkinson points to testimony that she was replaced by a Caucasian woman, and she maintains that her replacement is paid more money. However, there is nothing on the record to suggest that she is similarly situated to the woman who replaced her.

Based upon the foregoing, we conclude that Atkinson failed to establish that the circumstances in her case give rise to an inference of unlawful racial discrimination. The evidence suggests that the City had a bias in favor of hiring a young African American woman, that Harkins made racially insensitive comments on Atkinson's hair, and that Harkins was vocal about her sexual attraction to African American men. Further, there was evidence that Atkinson had disputes with another employee of a different race as it related to the inclusion of African American musical artists. Atkinson perceived the other woman as being prejudiced against her because of her race, but that perception was based on Atkinson's subjective feelings. Likewise, her assertion that her race resulted in her receiving less pay and having her parking space revoked is based upon her own speculation and belief. Moreover, the fact that a coworker's husband made racially inappropriate comments at a Christmas party does not give rise to an inference that *defendants* unlawfully discriminated against Atkinson. Nor does the fact that defendants reprimanded Atkinson for responding to the inappropriate commentary with her own inappropriate commentary. Accordingly, on this record, Atkinson has failed to establish a prima facie case of racial discrimination.

Assuming *arguendo* that Atkinson had met her burden, summary disposition was still warranted on her claim of racial discrimination. Under the *McDonnell Douglas* burden shifting analysis, if the plaintiff establishes a prima facie case of discrimination, then "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Major*, 316 Mich App at 541. "If the defendant gives a legitimate,

nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *White*, 334 Mich App at 108.

Here, defendants gave several legitimate nondiscriminatory reasons for their employment decision. Atkinson's performance was not satisfactory. Evidence that Atkinson was frequently late to work, missed meetings, and failed to invite necessary individuals to City events was unrefuted. As noted above, Atkinson admitted to being consistently late and missing meetings. She explained her tardiness by explaining that she had taken on the responsibility of caring for her brother's children in addition to her own. She notes that defendants were aware of that fact. Awareness of the reasons for an employee being late, however, does not mean that the employer condones the tardiness nor does it preclude an employer from determining that tardiness is a reason for termination. Additionally, the record reflects that Atkinson's termination occurred after it was determined that she had disclosed confidential information when she e-mailed a copy of a prospective employee's resume to her personal e-mail. Atkinson admits that disclosing confidential information is a terminable offense, but she maintains that the resume was, in fact, not confidential because it could be located online. As scheduler for the Mayor, Atkinson was not tasked with determining what information was and was not confidential. And there was testimony that the resume was considered to be confidential by the Mayor's office. On appeal, Atkinson makes light of the fact that she e-mailed the information to herself, not to a third party. Yet, testimony from Tate and the Mayor indicates that she was not authorized to do so. On this record, defendants have met their burden of showing a nondiscriminatory, legitimate reason to terminate Atkinson's employment.

As a result, even if Atkinson had established a prima facie case of racial discrimination, the burden would have shifted back to her to prove that "discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Hazle*, 464 Mich at 109 (quotation marks and citation omitted). That is, the plaintiff must show that the employer's stated, legitimate, nondiscriminatory reason was a "pretext for unlawful discrimination." *Id*. (quotation marks, citation, and alteration omitted). Atkinson cannot do so here. Although she argues that race was a motivating factor, she can point to nothing other than her subjective belief that race played a part in the decision to terminate her. The fact that Harkins made insensitive comments regarding her hair, made crude, sexual comments regarding African American men and Tate, and generally expressed frustration with African American women "maybe rightfully so" having a "chip" on their shoulders does not establish that race was a motivating factor in terminating Atkinson's employment. Summary disposition of the racial discrimination claim was warranted.

## 2. HARASSMENT CLAIM

Next, Atkinson contends that she presented a prima facie case of a hostile work environment based upon racial harassment. A plaintiff must prove the following elements to establish a prima facie case of a hostile work environment based on race discrimination:

> (1) [T]he employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended

to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Major*, 316 Mich App at 550 (citation omitted).]

Atkinson belongs to a protected group. Further, she has alleged that there were a number of statements made to her on the basis of her protected status, all of which were unwelcome. In particular, she directs this Court to Harkins's testimony, including Harkins's comments indicating that she was generally sexual attracted to African American men and was particularly attracted to Tate, her comments on Atkinson's hair on two occasions, and the general comment relating to African American women having a "chip on their shoulder." She also testified that on one occasion Tate, an African American, told her that African-American individuals have to "work twice as hard" to be just as good. Additionally, following the Christmas party, the Human Resources director told Atkinson that, as a Hispanic woman in a predominantly White environment, she understood how Atkinson felt, but that Atkinson "would do better to learn that the . . . rules to the game are different for every player." This testimony is sufficient to create a question of fact with regard to whether she was subject to communication or conduct on the basis of her race. And her testimony that the communications were unwelcome creates a question of fact on the third element of a harassment claim. See *id*.

She cannot, however, establish the fourth element. The determination of whether a hostile work environment exists depends on "whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id*. (quotation marks and citation omitted). Factors in evaluating whether an environment is hostile include the frequency and severity of discriminatory conduct; whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with the employee's work performance. See *Quinto*, 451 Mich at 370 n 9. Viewing the evidence in the light most favorable to Atkinson, it is clear that the comments were relatively infrequent. Although some of the comments could be construed as offensive or crude, a reasonable juror could not find that they had the effect of creating an intimidating work environment. Atkinson, therefore, cannot establish her racial harassment claim.

## 3. RETALIATION

Finally, Atkinson argues that the trial court erred by granting summary disposition of her retaliation claim. Under ELCRA, an employer cannot "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). A plaintiff must prove the following elements to establish a prima facie case of retaliation: "(1) that [she] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019) (quotations marks and citation omitted). In order to prevail, "the employee must do more than generally assert unfair treatment. The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination" under

ELCRA *Barrett v Kirtland Community College*, 245 Mich App 306, 319; 628 NW2d 63 (2001) (citations omitted).

Here, although Atkinson argues that she reported experiencing race discrimination and harassment to defendants before her termination, she was required to "do more than generally assert unfair treatment." *Id*. She conceded that she did not make a formal report of discrimination, harassment, or retaliation with Human Resources. Though a formal report may not have been necessary to raise "the specter of a claim of unlawful discrimination," Atkinson further explained that although she "reported certain treatment to [her] direct supervisors," she "was cautious to state discrimination or harassment." Even during her conversation with Human Resources after the Christmas party, Atkinson testified that while the topic was focused on race, she only delicately alluded that she felt mistreated on the basis of her race. Accordingly, the evidence demonstrates that Atkinson intentionally avoided raising issues of race when reporting conduct to her supervisors and Human Resources, which does not constitute protected activity.

Atkinson also testified that she reported concerns about mistreatment based on her race to a City Council member the day before she was terminated. Even assuming that this conversation constituted a protected activity, Atkinson does not otherwise present evidence to satisfy the second element, that defendants would have known about her conversation. See *El-Khalil*, 504 Mich at 161. The city council member was not a decisionmaker with respect to Atkinson's termination. And although Atkinson assumed the Mayor may have known about her conversation, that assumption relied solely on conjecture and speculation, which is insufficient to survive summary disposition.

Because Atkinson cannot establish that she engaged in any protected activity that defendant was aware of, she necessarily cannot establish a causal connection between her termination and any protected activity. See *id*. Accordingly, Atkinson failed to establish a prima facie case of retaliation, and the trial court did not err by granting summary disposition of this claim.

Affirmed. Defendants may tax costs as the prevailing party. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly